RUSHING *v.* EDWARDS

No. 42407 October 22, 1962 145 So. 2d 695

678

*J. B. Mitchell, Smith & Smith,* Corinth, for appellant.

*Mitchell, McNutt & Bush,* Tupelo, for appellee.

ETHRIDGE, J.

Alton Rushing, appellant, brought this suit in the Circuit Court of Tishomingo County against appellee, Whitney Edwards, for personal injuries resulting when Rushing fell off a truck loaded with hay and driven by Edwards. The questions center around the propriety of giving a sudden emergency instruction under the facts; Rushing's right to complain about it when he obtained

an instruction on the same theory and did not ask for a peremptory instruction on any issue; and whether the verdict was against the great weight of the evidence.

■■ ■ Since the jury returned a verdict for Edwards, the facts and reasonable inferences from them are stated in the light most favorable to Edwards.

Vandeford produced a crop of hay on land owned by Mrs. Sharp. For rent he paid her one-fourth of the crop; Vandeford was to receive the other three-fourths. Edwards bought from Mrs. Sharp her one-fourth of the hay. Vandeford was obligated to deliver that one-fourth to Edwards' barn. He also desired to haul the remaining three-fourths, belonging to him, to his barn. On the day before the accident, Vandeford arranged for Alton Rushing, and his two sons, Charles and Kenneth, who lived just over the Tennessee line from Tishomingo County, Mississippi, to help him load and haul the hay. On September 5, 1960, for that purpose Vandeford used a truck owned by him which had been "lying up", unused, for at least a year.

After Vandeford picked up Rushing and his two sons, they went to the field, hauled two loads of baled hay, and delivered them to Vandeford's barn. Vandeford drove his truck all that morning. The brakes were all right on both of the trips, and when they returned to the field after dinner. Vandeford and Edwards were friends and neighbors, and helped one another from time to time without charge, by swapping work. After dinner Vandeford drove to Edwards' house, and arranged with him to help that afternoon with further loading and hauling of the hay. Vandeford drove the truck back to the field, with Edwards in it, and then went to a nearby field to cut and bale some other hay.

Vandeford hired plaintiff (at $5 a day) and his two sons, and paid all of them. They were not employees of Edwards. Vandeford requested Edwards to drive the truck on the afternoon hauls. He told Edwards "to

watch the truck, that it had been sitting there for about a year and hadn't been used''; but he did not say anything about the brakes. The Rushings loaded the truck each time, with about eighty-five bales. It had no sideboards, and the hay was not tied down but only stacked. That afternoon Edwards, driving the truck, hauled two loads of hay without difficulty, one to Vandeford's barn, the second to his barn.

The accident happened on the third load of that afternoon, destined for Vandeford's barn. Before that, the brakes had been working all right. Edwards said, ''Everytime I stepped on the brakes, they worked.'' ''We went down the grade twice before and we didn't have a bit of trouble, why should I have expected any?'' On the preceding trips, the truck was driven well over one-fourth of a mile each way. On the third load of the afternoon, Edwards again drove the truck, with Charles Rushing in the cab beside him. Plaintiff Alton Rushing and his son, Kenneth, were riding on top of the load. Edwards drove on a field road up to a graveled country road, which was narrow, and into which the loaded truck could not be turned without backing up and making a second turn. When he backed up, the brakes locked, and apparently unlocked. He then turned on the road going east, and drove for about one-fourth of a mile to a T-intersection of a road running north and south, upon which the eastbound road ended. About 200-250 yards from the intersection the road began a slight downgrade, dropping about fifteen feet over that distance.

When Edwards moved over the ridge and started downgrade to the intersection, 200-250 yards away, he was driving about twenty miles per hour. He pumped the foot brakes and found they did not work. Charles Rushing grabbed the emergency brake and pulled it up, but it did not hold. Charles said that he thought the emergency brake ''burned up'' when, before this day,

the truck was hauling a load of lumber. With no brakes, the truck ran faster and faster. Trying to get the truck in gear, it got in neutral, and Edwards was not able to move it back into gear. When he reached the intersection, it was moving about twenty-five miles per hour. At this dead end, he turned left, the truck did not turn over, but most of the hay was thrown off, along with Alton Rushing and his son. The hay fell on Rushing, and he suffered a broken arm, bruises and contusions. The truck rolled up the road about three lengths, and stopped, the brakes still not working.

Edwards said that he always pumped the brakes on any truck he was driving. Before the accident, on the earlier hauls, he did the same thing with this truck, and the brakes had worked. Whether the truck was old or new, he always pumped the brakes when hauling.

After the accident, plaintiff was carried to a hospital. Charles Rushing drove the truck home to tell his mother about it, and returned it to Vanderford's home. He told Vanderford that the brakes went out near the intersection. Vandeford checked them the next morning, and found the truck had no brakes. He noticed a leak of brake fluid from one of the cylinders.

Rushing did not ask for a peremptory instruction, but made a motion for a new trial. He contends the verdict is against the overwhelming weight of the evidence; that Edwards was negligent in driving the truck at an excessive rate of speed, failing to keep it under control, and failing to exercise the care of a reasonable, prudent man in its operation, with particular reference to his failure to inspect both the foot and emergency brakes.

Edwards relied principally upon the existence of a sudden emergency, which was set forth in the following instruction to the jury: "The Court instructs the jury for the Defendant, Whitney Edwards, that under the law of this State, a person confronted with a sudden

emergency not of his own making is not held to the same accuracy of judgment as one who has time to pause and reflect, and is not negligent if he acts as a person of reasonable prudence would have acted under similar circumstances. The Court further instructs the jury that if you believe from the evidence in this case that the Defendant Whitney Edwards was confronted with a sudden emergency which was not of his own making and that he acted as a person of reasonable prudence would act under such circumstances, then you will find for the Defendant Whitney Edwards.''

██ ██ Appellant says it was error to give this instruction because the phrase ''not of his own making'' did not properly present the question of whether there was any negligence on the part of defendant which proximately caused the sudden emergency. ██ ██ The emergency rule cannot come into operation at all ''if the emergency was proximately caused by the fault of the driver.'' Jones v. Dixie Greyhound Lines, 211 Miss. 34, 50 So. 2d 902 (1951). It is said that the question is whether any negligence of defendant caused in whole or in part the sudden emergency; and that the words ''not of his own making'' did not properly submit that issue to the jury.

This form of instruction on sudden emergency was upheld without opinion in Hill v. Pruitt, 99 So. 2d 601 (Miss. 1958); see also Delta Chevrolet Co. v. Waid, 211 Miss. 256, 51 So. 2d 443 (1951) (instruction not referred to in opinion, affirming judgment, but no reversible error therein); Natchez Coca-Cola Bottling Co. v. Watson, 160 Miss. 173, 133 So. 677 (1931). Pullin v. Nabors, 240 Miss. 864, 128 So. 2d 117 (1961), involved a case where an instruction containing the words, ''sudden emergency not of his own making'' was discussed. It was said the instruction was improperly given, because ''if there was an emergency . . . it was of his own making.'' 240 Miss. at 874. However, the opinion did not criticize

the form of the instruction, but the giving of it under the particular facts. See 1 Alexander, Miss. Jury Instructions (1953), pp. 205-206.

We think defendant's instruction and the three given plaintiff submitted adequately the issue of the emergency being proximately caused by the fault of the driver. The phrase "not of his own making" is not as precise as "proximately caused by the fault of the driver", but its use here could not have misled the jury. Moreover, Rushing's three instructions on sudden emergency amply set forth additional definitions and limitations upon the doctrine. All of the instructions must be read together. Considering them as a whole, the jury was amply advised of the sudden emergency defense.

██ Moreover, we decline to hold, as appellant urges, that Edwards was guilty of negligence as a matter of law proximately contributing to Rushing's injuries. This contention is made here for the first time. It was not the theory on which the case was tried. In the circuit court both parties considered that the question of whether a sudden emergency was created through negligence on the part of Edwards was an issue of fact for the jury. Appellant obtained three instructions on that issue and appellee one. The trial court should not be put in error for granting instructions requested by appellant as well as appellee.

██ These reasons are crystallized in the doctrine that a party may not change the theory of his case in the appellate court from that on which he tried it below. Coulter v. Robertson, 14 S. and M. (22 Miss.) 18 (1850); Ill. Cent. RR Co. v. Sumerall, 96 Miss. 860, 51 So. 545 (1910); Noxubee County v. Long, 141 Miss. 72, 106 So. 83 (1925); Miss. Power Co. v. May, 173 Miss. 580, 161 So. 755 (1935); Sumner Stores v. Little, 187 Miss. 310, 192 So. 857 (1940); Picard v. Waggoner, 204 Miss. 366, 37 So. 2d 567 (1948).

Nor does the statute requiring every motor vehicle to include two separate means of applying the brakes affect this conclusion. Miss. Code 1942, Rec., Sec. 8249. If appellant had desired to submit the precise question of a duty on Edwards to check the emergency brakes prior to using the truck, it could have been done with an instruction pertaining to that factor. Under the circumstances, it still would have been a question of fact for the jury as to whether Edwards, not the owner of the vehicle, was negligent in failing to check the emergency brakes prior to temporarily driving the truck as an accommodation for his friend, and whether such negligence, if any, was a proximate cause of the sudden emergency.

In summary, there were no reversible errors, and the verdict is not against the great weight of the evidence. The facts presented issues for the jury, the case was tried on that basis, decided by the jury, and should not be reversed.

Affirmed.

*Lee, P. J., and Kyle, Rodgers and Jones, JJ.,* concur.