BARBER *v.* GREAT SOUTHERN DEVELOPMENT COMPANY, INC.

No. 43008          May 11, 1964          163 So. 2d 735

*Morse & Morse,* Gulfport, for appellant.

*Holleman & Hurlbert,* Wiggins, for appellee.

GILLESPIE, J.

W. R. Barber filed suit in the Circuit Court of Harrison County against Great Southern Development Company, Inc., to recover $50,000 alleged to be due him by the defendant as a real estate commission on the sale of the Great Southern Golf Course to Mrs. Dorothy D. Brown for $1,000,000. The jury returned a verdict for the defendant, judgment was entered accordingly, and the plaintiff appealed.

Appellee was the owner of a golf course on U. S. Highway 90 between Gulfport and Biloxi in Harrison County, and it was the desire of Joe Stewart, a resident of Buffalo, New York, and president and principal stockholder of appellee, to sell the golf course to Mrs. Brown, owner of the Broadwater Beach Resort Motel, which is located a short distance to the east of the Great Southern Golf Course. Charles Stewart was vice-president of appellee and manager of the Great Southern Golf Course. Several other members of the board of directors of appellee lived on the Gulf Coast. Charles Stewart and appellant were intimate friends, and played cards together a great deal and visited in each other's homes from time to time. Appellant had once been manager of

the Broadwater Beach Motel operated by Mrs. Dorothy D. Brown.

It was the contention of appellant, and he introduced testimony tending to so prove, that in May 1961 Charles Stewart engaged appellant to sell to Mrs. Dorothy Brown the Great Southern Golf Course. Appellant contended that he contacted a nephew of Mrs. Brown from time to time thereafter and also talked to Mrs. Brown several times concerning the purchase of the golf course, and on one occasion when he was going to New Orleans with Mrs. Brown, he pointed out the golf course to her. Appellant contended that he was engaged to sell the golf course, and was the procuring cause of the sale, and became entitled to the usual commission of five percent on the sale price. The contract of sale was entered into between appellee and Mrs. Brown on September 1, 1962.

On the other hand, it was the contention of appellee, and it offered testimony tending to so prove, that the conversations had between Charles Stewart and appellant were causal and general in nature without any intention or purpose on the part of Stewart to engage appellant as a real estate agent, and that since appellant was engaged in another type of business than real estate, Charles Stewart did not know appellant was a real estate agent. Appellee's contention was that while Charles Stewart had several casual conversations with appellant concerning the sale of the golf course these conversations were merely those of one friend with another without any intention to engage appellant as a real estate agent to sell the golf course. It was further the contention of the appellee that Charles Stewart had no authority to engage a real estate agent to sell the golf course, and the testimony of Charles Stewart and his half-brother, Joe Stewart, who lived in Buffalo, New York, was that Charles Stewart had no such authority. Appellee also contended appellant was not the procuring cause of the sale.

■■ ■ It is not necessary to detail the evidence offered by the parties tending to establish their respective contentions. It is sufficient to say that all factual issues were questions for the jury.

Appellant's first assignment of error is that the trial court erred in granting four instructions to the appellee. The first instruction stated to the jury that there were three essential elements of appellant's case: (1) Plaintiff must have been the procuring cause of the sale; (2) There must have been a contract between appellant and appellee, and (3) Charles Stewart was authorized to act for appellee in engaging the services of appellant and his actions were those of appellee. The instruction then concluded with the statement that if the appellant failed to prove any of these three elements the jury should find for the appellee. The second instruction complained of also referred to the necessity of proving that Charles Stewart had authority from the corporation to engage a broker or agent to effect the sale of the golf course. The third instruction stated that if the jury believed from the evidence that the appellant's actions in connection with the sale of the golf course were without any authority from the appellee that the jury should find for defendant. The fourth instruction required that the jury find that plaintiff was "actually engaged" or hired by the defendant corporation before it could find for plaintiff.

■■■ Appellant contends that these instructions place too great a burden on him in several respects, but the main thrust of his argument is that it was error for these instructions to require the jury to believe that appellee authorized Charles Stewart to engage appellant to find a purchaser for the golf course. Appellant may not complain of these instructions in this respect for the reason that he requested and received an instruction presenting to the jury the same issue. ■■ ■ Where both parties present an issue to the jury, neither

may complain that such instruction was erroneous. Rushing v. Edwards, 244 Miss. 677, 145 So. 2d 695. Appellant also contends that the instructions complained of did not properly take into account the theory of ratification of Charles Stewart's actions by acceptance of the benefits. This was not the theory the case was tried on in the lower court. Both parties presented to the jury the direct issue whether or not Charles Stewart had authority to engage appellant.

The next assignment of error is based on the following: During his final argument to the jury appellant's counsel stated to the jury: "Gentlemen, this is the last time that Billy Barber will have an opportunity to ask a jury to pass on this case. If Charlie Stewart didn't have the authority to give him that commission, you've got it, collectively, nine or more of you."

The defendant objected and the Court said: "He would have to have the authority before the jury would have it." Appellant says that the court fell into dual error, orally charging the jury on the law, which is not permissible under our practice, and instructing the jury that the case stood or fell on the authority of Charles Stewart to engage Barber.

■■ ■ This statement by the trial judge was not in the nature of an instruction to the jury but was an explanation of his ruling, and while it should not have been given, it was not such error as to require reversal of this case. Appellant cites no authority justifying a reversal on this assignment of error.

■■ ■ The next assignment of error is based on the refusal of an instruction requested by the appellant which appears in the record at page 39. The instruction referred to eliminated the necessity of any contract between appellant or appellee, either express or implied, and we are of the opinion that no error resulted from the refusal of this instruction.

The fourth assignment of error is based on the refusal of the lower court to admit in evidence testimony that Charles Stewart offered to pay appellant's commission in capital stock. The court refused to admit this evidence on the ground that it was an attempt to show an offer of compromise. We are of the opinion that the ruling of the trial court was correct.

The fifth and final assignment of error is based on the following which occurred during the argument to the jury:

"BY MR. HOLLEMAN: This is a serious case. It is a case which has a tremendous responsibility. It's more money, I guess, than all of us have ever seen. It's a case where this man comes here and asks for $50,000.00, on a secret deal. It was kept a secret from Gaston Hewes, although the verdict would cost him $700.00. It was kept a secret from L. A. Koenenn, although L. A. Koenenn would have to pay $700.00 of it.

"BY MR. GEORGE MORSE: If your Honor please, I want to object to that line of argument.

"BY THE COURT: Sustained. I don't think you have a right to argue how much it would cost the respective stockholders."

This was not reversible error. The record showed without any dispute the number of shares of stock outstanding and the relative amount owned by Gaston Hewes and the other stockholders. Therefore, the statement made by Mr. Holleman was correct in fact and if it was error for him to make the statement, the court sustained the objection. There was no motion for a mistrial.

Viewing this record as a whole, it appears that this case was ably prosecuted, ably defended, and free from reversible error. It is affirmed.

Affirmed.

*Lee, C. J., and Ethridge, Brady and Patterson, JJ.,* concur.