510 So.2d 510 (1987)
CIG CONTRACTORS, INC.
v.
MISSISSIPPI STATE BUILDING COMMISSION.
No. 56930.
Supreme Court of Mississippi.
July 15, 1987.
Richard C. Bradley, III, Reynolds, Prewitt & Bradley, Jackson, for appellant.
Edwin Lloyd Pittman, Atty. Gen., Charles T. Rubisoff, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before WALKER, C.J., and DAN M. LEE and PRATHER, JJ.
DAN M. LEE, Justice, for the court:
CIG Contractors, Inc. (CIG) appeals an adverse judgment rendered in the Circuit Court of Hinds County in favor of the Mississippi State Building Commission. CIG sought $58,953.35, plus overhead, taxes and a percentage for profit, as additional compensation for corrective work it performed to complete its construction contract for the Chemistry Building on the University of Mississippi campus. The Circuit *511 Court, sitting without a jury by stipulation, granted judgment for the Building Commission. We affirm.
CIG argues five assignments of error on appeal, but we consolidate them into two topics for purposes of our discussion.

I.

FACTS
The suit giving rise to this appeal represents an attempt by CIG to receive compensation for having to tear out and replace concrete it had poured as part of the basement floor, as well as having to fill and compact additional soil beneath the concrete, during its part of construction of the chemistry building on the campus of the University of Mississippi.
It is the second time this particular case has come before this Court. In CIG Contractors, Inc. v. Mississippi State Building Commission, 399 So.2d 1352 (Miss. 1981), this Court reversed the sustaining of a demurrer to CIG's initial complaint. Upon retrial CIG added a second count, discussed infra.
On February 17, 1975, CIG entered into a construction contract with the owner, Mississippi State Building Commission (hereinafter "the Commission"), to build the "Physical Science Facility, Science Center, Phase IV, University of Mississippi" (hereinafter referred to as the "chemistry building"). The contract entered into was an American Institute of Architects Document A101, "Standard Form of Agreement Between Owner and Contract," 1974 edition. The contract documents consist of the above agreement, the Conditions of the Contract (General and Supplementary), the drawings for the project, and the specifications for the project, as well as all addenda and modifications.
The State Building Commission entered into several contracts with various contractors for different parts of the project. CIG bid for and was awarded the contract for general contract work. B.J. Lee Mechanical Contractors, Inc. bid for and was awarded the contract for the mechanical and plumbing work. Another separate contract was let for the electrical work.
CIG contracted to excavate and prepare the site, the soil to support the concrete slab, pour the slab and walls, perform masonry work, carpentry, millwork, moisture control and install the doors, windows and glass. Under the project specifications CIG was also responsible for de-watering operations at the construction site.
When the basement floor and some of the upper floors had been partially completed, in December 1975 a routine inspection revealed the first hint of the problem which brought about this litigation.
Subsequent tests and inspections made it apparent that soil beneath the basement floor had either eroded or settled, creating voids between the concrete and the ground. Rainwater falling on top of the building and in the excavation area undisputedly penetrated beneath the basement floor which led to the soil problems.
These problems could only be corrected by breaking out the basement concrete slab in several spots and replacing the soil, slab and related construction. The trial court found that the damage was substantial, a finding not challenged on appeal.
CIG was not the only contractor affected. Soil around some of B.J. Lee's pipes also needed repair. The Commission ordered that each contractor repair the damage to its own work. Each contractor was instructed to keep up with its costs and after the repairs were completed, an evaluation would be made to determine responsibility for them. At no point did the Commission agree or even imply that it would be responsible for any of these costs.
CIG unsuccessfully sought a change order from the Commission to cover the repair work. Ultimately without the benefit of a change order, CIG acquiesced, broke out the concrete in the basement and made the requested repairs.
After the Commission unsuccessfully attempted to persuade the contractors to settle among themselves, it prepared a report in which costs were broken down into categories and attributed in percentages to *512 those contractors deemed responsible. CIG refused to accept the recommendations and instituted this litigation against the Building Commission to recover all of its costs in performing the repair work.
At trial, the court heard conflicting testimony as to who was responsible for the soil problems.
The Commission introduced evidence through its architect and engineers that CIG had failed to comply with the de-watering specifications, or in the alternative failed to properly prepare the soil upon which the concrete was poured.
CIG attempted to show that it complied with its obligations, including the de-watering specifications, and that B.J. Lee, the plumbing contractor, was solely responsible for the voids. Travis Godwin of CIG testified that B.J. Lee failed to seal and caulk around pipefittings which penetrated the basement concrete slabs and around other pipefittings which penetrated the walls of a fresh air intake tunnel below the basement floor, contrary to B.J. Lee's contract specifications requiring that all pipefittings be caulked or sealed.
CIG introduced expert testimony that the rainwater falling on the building seeped through the basement floor pipefittings and drained into the fresh air tunnel through the other unsealed pipefittings, eroding soil from beneath the basement slab, thereby causing voids under it.
The trial court dismissed count one of CIG's complaint which alleged a breach by the Commission of its implied duty not to hinder or delay CIG. On CIG's second count alleging "extra work," the trial court held that the Commission was not in any way responsible for the damage, that CIG should have looked to B.J. Lee for compensation; furthermore, CIG was negligent in carrying out its dewatering contract and granted judgment for the Commission on count two.

II.

Did the Trial Court Err in Dismissing CIG's Claim that the Commission Breached Its Duty Not to Hinder, Interfere, Delay or Otherwise Effect CIG's Work?
CIG alleged in count one that the Commission breached its implied promise and obligation to coordinate and cooperate with CIG and to do nothing which would hinder, interfere, delay or otherwise affect CIG's work. This breach allegedly occurred by the Commission's failure to enforce the provisions of the Commission's contract with B.J. Lee requiring B.J. Lee to caulk or seal around pipefittings.
At the close of CIG's evidence, the trial court dismissed this count of the complaint on authority of Hanberry Corp. v. State Building Commission, 390 So.2d 277 (Miss. 1980). In Hanberry, this Court sustained a demurrer to a complaint holding that an implied in law duty to coordinate would not support such action, stating:

In regard to the allegation of the declaration that the Building Commission had an "implied" contractual duty to coordinate the work of the three prime contractors and see that the work of each was performed properly, we refer to the contract entered into with each contractor by the Commission. It plainly says that "all prime contractors and all subcontractors shall coordinate all work, one with the other, so as to facilitate the general progress of the work." We find that this provision and all provisions of the contract taken together clearly show that the Building Commission correctly relied on the three prime contractors to coordinate between themselves. As hereinbefore stated, independent contractors, architects and engineers, were regularly inspecting the progress of the work, but, as shown by the contracts, they were acting as independent agents and are not parties to this cause. There had to be some reason for the Building Commission to handle this rather large construction job in the manner in which it was handled. Even though the entering into separate prime contracts might be questioned in the construction industry, this was the way it was done, and in so doing, the Building Commission relieved itself of responsibility. Therefore, *513 we hold that the lower court was correct in sustaining the demurrer of the Building Commission to the declaration.

Id. at 282.
In CIG Contractors v. Miss. State Building Commission, 399 So.2d 1352 (Miss. 1981), this Court held that CIG stated a cause of action in its complaint, in light of Hanberry. It did so not because of a distinction between the allegations in Hanberry and in CIG, but rather because unlike Hanberry, this Court did not have the contract before it to determine if indeed an implied contractual duty existed which did not exist in Hanberry.
Having now reviewed the contract in this case, we think Hanberry is controlling and that the trial court properly dismissed the first count of CIG's complaint. This contract has the same provision as in Hanberry requiring the contractors to coordinate their work.
CIG attempts to distinguish Hanberry in that it did not seek to enforce a duty to coordinate, but rather seeks to recover for the Commission's failure to enforce the provisions of the contract between the Commission and B.J. Lee. We think this misses the point. CIG sought to enforce virtually the same duty which in Hanberry we held did not exist. In Hanberry this Court held, in essence, that under the contract the Commission had no implied duty to the contractor to see that the work of other contractors was coordinated.
We find no distinction in CIG's claim that the Commission had a duty to assure that another contractor's work was done properly, rather than merely on time. There was no error in dismissing this claim.

III.

Did the Trial Court Err in Finding that CIG Was Not Entitled to Recover For Extra Work?
At the close of its case, CIG was allowed to amend its complaint to conform to the proof. See Miss.R.Civ.P. 15.
After hearing all the evidence, the trial court held that CIG had not proved that Commission was in any way responsible for the damage; furthermore, CIG's own negligence caused the damage. CIG takes issue with both of these determinations.
The trial court found that CIG contracted to furnish a completed work, and which required proper soil support for the basement slab. The evidence was conclusive that the soil under the slab did not meet this requirement. It is difficult to consider this repair work as "extra" under this theory, whether or not the soil was properly compacted.[1]
CIG argues that it did not contract to furnish a completed work. It is true that CIG was not the sole prime contractor responsible for completion of the building; however, the contract required it to complete its work, with the risk of loss being CIG's alone. CIG presents nothing which even remotely suggests that the Commission accepted the work prior to discovery of the voids. In light of this, we hold that the trial court correctly determined that CIG was required to render its part of the work in a completed state.
CIG also argues that a contractor that complies with the plans generally will not be liable to the owner for loss or damage which resulted after the work has been completed, and is attributed solely to defective or insufficient plans, see Trustees of First Baptist Church of Corinth v. McElroy, 223 Miss. 327, 78 So.2d 138 (1955); Havard v. Board of Supervisors of Humphreys County, 220 Miss. 359, 70 So.2d 875 (1954); Bluebell, Inc. v. Cassidy, 200 F. Supp. 443 (S.D.Miss. 1961). CIG argues it should be able to recover from the Commission for its loss or damage attributed to defective or insufficient plans.
CIG's own proof, however, was that the repairs were necessitated by B.J. Lee's *514 failure to meet his contractual obligations, not because of any inadequacies in the plans and specifications.
In addition, far from clearly establishing that CIG complied with the plans and specifications, the record contains substantial evidence that CIG did not meet its contractual obligations, especially its responsibility under the de-watering specification. No doubt the trial court considered this when it found that the Commission was in no way responsible for the soil problems.
Despite this, CIG argues that the trial court erred in holding that the Commission was not responsible. CIG points to general contract condition 13.1.2, which provides:
If any other work has been covered which the Architect has not specifically requested to observe prior to being covered, the Architect may request to see such work and it shall be uncovered by the contractor. If such work be found in accordance with the Contract Documents, the cost of uncovering and replacement shall, by appropriate Change Order, be charged to the Owner. If such work be found not in accordance with the Contract Documents, the Contractor shall pay such costs unless it be found that this condition was caused by a separate contractor employed as provided in Article 6, and in that event the Owner shall be responsible for the payment of such costs.
CIG maintains this provision recognizes that it could recover for the repair work. CIG did not raise this point until it moved for judgment n.o.v. CIG is now arguing this theory for the first time on appeal which is different from that pursued at trial. Thus, CIG is barred from pursuing this theory for the first time on appeal. See Cadillac Corp. v. C.R. Moore, 320 So.2d 361 (Miss. 1975); Walls v. Hammond Ford Co., 220 So.2d 347 (Miss. 1969); Rushing v. Edwards, 244 Miss. 677, 145 So.2d 695 (1962); McKendrick v. Lyle Cashion Co., 234 Miss. 325, 105 So.2d 480 (1958). Ultimately, we need not rest our decision on this point, for we hold that in any event CIG cannot prevail.
CIG agrees that it would be entitled to recover under General Condition 13.1.2 only if the damage to its work was caused by another contractor. The trial court found that CIG was responsible for the water penetrating beneath the basement slab, without which no damage would have occurred. We cannot reverse this finding of fact unless we find it to be manifestly wrong. Hardy v. First National Bank of Vicksburg, 505 So.2d 1021 (Miss. 1987); Rives v. Peterson, 493 So.2d 316 (Miss. 1986); International Harvester Co. v. Peoples Bank and Trust Co., 402 So.2d 856 (Miss. 1981). We cannot say on this record that the trial judge was manifestly wrong.
Certainly CIG was not solely responsible. B.J. Lee's failure to caulk or seal pipefittings no doubt contributed to the problem. The Commission, architect and project engineers recognized this and assigned part of the blame to B.J. Lee. CIG refused to accept this assessment and has continued to disavow all responsibility. CIG has never sought, and does not now seek, review of what should be its proper share of responsibility. The trial court found against CIG as to its claim and under our limited scope of review, we cannot overturn it.
Therefore, the order of the circuit court of the First Judicial District of Hinds County, Mississippi, denying CIG recovery in this case be and the same is hereby affirmed.
AFFIRMED.
WALKER, C.J., HAWKINS and ROY NOBLE LEE, P.JJ., and PRATHER, ROBERTSON and GRIFFIN, JJ., concur.
SULLIVAN and ANDERSON, JJ., not participating.
NOTES
[1] Neither at trial nor on appeal has the Commission suggested that CIG might have proceeded at its peril by failing to obtain a written change order. See City of Mound Bayou v. Roy Collins Const., 499 So.2d 1354, 1358 (Miss. 1986). We thus do not address this question.