# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CA-01615-SCT

*LAMPKIN CONSTRUCTION CO., INC.*

*v.*

*SAND SPECIALTIES & AGGREGATES, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/25/2014 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DAVID BONDS ELLIS |
| | DAVID W. MOCKBEE |
| ATTORNEYS FOR APPELLEE: | THEAR JULES LEMOINE |
| | JAMES GRADY WYLY, III |
| | CHRISTINE BOCEK WHITMAN |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 12/17/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., PIERCE AND COLEMAN, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     Sand Specialties & Aggregates, LLC, and Lampkin Construction Company entered into a contract under which Sand Specialties was to sell certain sand mining equipment to Lampkin Construction for $350,000. The equipment was delivered, but the full contract price was never paid.  Sand Specialities filed suit against Lampkin Construction.  After a trial, the judge entered a directed verdict in favor of Sand Specialities as to ownership of the equipment, and the jury awarded Sand Specialities $92,000 in damages.   Lampkin Construction appeals.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

¶2.    In January 2012, Sand Specialties, Lampkin Construction, and CSWS Mineral Resources entered into a Sale Agreement under which Sand Specialties agreed to sell gravel and sand-mining equipment to Lampkin Construction and CSWS for $350,000.  The agreement was for eleven pieces of equipment; the largest piece of equipment was an Eagle Sand Classifier.  Lampkin Construction made the initial payment of $100,000, and the remaining $250,000 would be tendered within thirty days of delivery of the equipment.  The Eagle Sand Classifier had been delivered when the contract was signed, and the buyers were to arrange for delivery of the rest of the equipment.  The agreement provided that Sand Specialties would hold title to the equipment until the $350,000 was paid in full and, if the buyers failed to pay, they were required to return the equipment and forfeit the $100,000 payment.  The rest of the equipment was delivered by the end of January.  Lampkin Construction failed to pay the remaining $250,000.  Lampkin Construction maintains that it did not receive all of the parts needed for the equipment to work; however, the particular pieces Lampkin Construction wanted were not listed in the contract.

¶3.    In August 2012, Sand Specialities filed a Petition for Replevin and Complaint for Damages against Lampkin Construction, CSWS, and several individuals.  Lampkin Construction filed an Answer and Counterclaim, seeking return of its $100,000 payment. Lampkin Construction claimed that the $100,000 payment actually was only an advance made on behalf of CSWS and that, when the rest of the equipment was delivered, CSWS was

2

to pay Sand Specialties the remaining $250,000 and pay back Lampkin Construction's $100,000 advance. Lampkin Construction also filed a cross-claim against CSWS.

¶4. The trial court held a hearing on the petition for replevin in January 2013. In August 2013, the trial court entered an order denying Sand Specialities' petition, and ruling that Sand Specialities must repay Lampkin Construction's $100,000 and could retake possession of the equipment at its own expense. Sand Specialities filed a petition for interlocutory appeal, which the Court denied. In November 2013, Lampkin Construction filed a motion for contempt, alleging that Sand Specialities was in contempt for not paying Lampkin Construction $100,000 pursuant to the court's order. Naturally, Sand Specialties opposed the contempt motion, claiming that the order did not set a time by which to comply and that it was not a final judgment because it did not dispose of all of the issues and parties. Sand Specialties also filed a motion to reconsider, asserting that the trial court should not have awarded monetary damages when it ruled on the replevin action.

¶5. In January 2014, the trial court set aside its August 2013 order denying the motion for replevin, holding that its "ruling should have been limited to the issues of rightful possession and title." The trial court entered a new order denying Sand Specialties' motion for replevin, holding that there were "factual and legal issues requiring adjudication before the writ may issue." A few months later, Lampkin Construction filed a motion for partial summary judgment, seeking a judgment in its favor on the intentional tort claims and partial summary judgment on the breach of contract claims. The trial court denied Lampkin Construction's motion for summary judgment, finding that genuine issues of fact existed for trial.

3

¶6.     Trial was held in July 2014.  Brad Robin, owner of Sand Specialities, testified that the equipment had been left out in the open since 2012 and it had deteriorated; he testified that the equipment was now worth about $150,000 less than when it was delivered.  Lampkin Construction objected to the testimony but did not dispute it or offer evidence in the alternative.  It appears that all of the equipment listed in the contract was delivered, however, Lampkin Construction claims that certain pieces that were required to operate the machinery were not delivered.  Robin testified that the pieces Lampkin Construction wanted were extra pieces that had been built and added for convenience, and the equipment was functional without them.

¶7.     Ronnie Lampkin of Lampkin Construction also testified.  He claimed that he had paid the $100,000 as an advance to CSWS because he was present when Sand Specialities delivered the Eagle Sand Classifier, and Sand Specialities had demanded payment at that time.  Lampkin testified that CSWS could not get $100,000 quickly, so he advanced the money for CSWS from a line of credit, but he did not have anything to do with the agreement between CSWS and Sand Specialties.  Several days later, Lampkin received the contract from Sand Specialties that listed Lampkin Construction as a buyer with CSWS.  Lampkin claims that he signed the contract only because, if he did not sign it, Sand Specialties would not deliver any more equipment, and he signed it because "they already had [his] $100,000."  Lampkin claims that he was "duped" into signing the agreement and that he signed it "under duress with no basically other choice."  Lampkin Construction has not made any formal claims of fraud or duress.

4

¶8.    After both sides rested, the trial court directed a verdict on the issue of possession and ownership of the equipment and awarded the equipment to Sand Specialties. The ruling was made outside the presence of the jury. Lampkin Construction first asked the court not to tell the jury about the ruling, but then changed its mind and asked the judge to instruct the jury that the court had awarded possession and ownership to Sand Specialties. Lampkin Construction also requested a limiting instruction, which directed the jury that the court's ruling should not be construed as a finding for either party on the breach of contract claim or on the issue of damages. The court gave the requested instructions.

¶9.    The jury returned a verdict in favor of Sand Specialties and awarded damages in the amount of $92,000. Lampkin Construction filed a motion for judgment notwithstanding the verdict (JNOV) or for a new trial, which the court denied. Lampkin Construction appeals.

## DISCUSSION

¶10.   Lampkin Construction asks the Court to reverse and order a new trial. Sand Specialties asks the Court to affirm the trial court's directed verdict and the jury's award of damages. Lampkin Construction raises four assignments of error.

### I.   Whether the trial court erred in granting a directed verdict as to possession of the equipment.

¶11.   A trial judge's decision on a motion for directed verdict is reviewed de novo. ***Kennedy v. Illinois Cent. R.R. Co.***, 30 So. 3d 333, 335 (¶ 6) (Miss. 2010). "In reviewing a motion for a directed verdict this Court must decide whether the facts presented, together with any reasonable inferences, considered in the light most favorable to the nonmoving party, point so overwhelmingly in favor of the movant that reasonable jurors could not have returned a

5

verdict for the [non-movant]." *Id.* (quoting *Robley v. Blue Cross/Blue Shield of Miss.*, 935 So. 2d 990, 996 (¶ 16) (Miss. 2006)).  Looking at the terms of the contract, it is clear that Sand Specialties owns the equipment, and the trial judge's directed verdict was not in error.

¶12.    The contract between Sand Specialties, Lampkin Construction, and CSWS provided, in pertinent part:

> **2. TERMS OF SALE**
>
> a.      The mining equipment more particularly described above is sold As Is, Where Is, with no warranty of fitness or freedom from defect.
>
> b.      The sale price is, and Buyers agree to pay, the sum of $350,000 for the mining equipment.
>
> c.      The terms of payment are as follows: Buyers will pay the sum of $100,000 for the mining equipment by check payable to Robin Capital Holdings, LLC and, upon payment, will be given possession of the Eagle Sand Classifier. The parties acknowledge that Lampkin Construction Co., Inc. has tendered said check to SSA [Sand Specialties] and that SSA has given Buyers possession of the Eagle Sand Classifier.[1]
>
> e.      No later than 30 calendar days from the date of this agreement as first above written, Buyers shall wire to the IOTA account of Alvin J. Bordelon, Jr., LLC, counsel for SSA, a second payment of $250,000, or alternatively, may give Seller a check payable to SSA in said amount, which, when paid, will discharge all of Buyer's payment obligation.
>
> f.      Upon receipt of the second payment set forth in subparagraph e, above, title and ownership to the mining equipment shall pass to Buyers.
>
> g.      Until receipt of the second payment, ownership and title to the mining equipment, including the Eagle Sand Classifier, shall remain fully vested in Seller, no matter where said equipment is located; and Buyers shall return same to Seller upon demand, and at their cost, if the second payment is not timely made as set forth herein. If the second payment is not timely made, Buyers will return the Eagle Sand Classifier to Seller at Buyers' cost and will

---

[1] The contract does not include a subsection d.

6

forfeit the $100,000 which Seller has received per subparagraph c, above. The forfeiture is accepted and understood by Buyers, as time is of the essence and as Seller has other purchasers at hand who wish to buy all of the mining equipment.

¶13. As noted in subsection (c), Lampkin Construction had made the initial payment of $100,000 when Sand Specialties delivered the Eagle Sand Classifier to Picayune, Mississippi, on January 4, 2012. On January 9, 2012, the buyers signed the contract, acknowledging the buyers' receipt of the Eagle Sand Classifier. The buyers were to arrange for delivery of the rest of equipment and then pay the remaining $250,000 within thirty days of delivery. The agreement provided that Sand Specialties would hold title to the equipment until the $350,000 was paid in full and, if the buyers failed to pay, they were required to return the equipment and forfeit the $100,000 payment. The remaining equipment was delivered at the end of January, but the buyers did not pay the remaining $250,000. Therefore, pursuant to the plain terms of the agreement, title to the Eagle Sand Classifier and the other equipment remained vested in Sand Specialties. Further, Lampkin Construction's failure to pay the remaining amount resulted in forfeiture of its initial $100,000 payment. The terms of the contract are unambiguous; therefore, the contract should be enforced as written. *Epperson v. SOUTHBank*, 93 So. 3d 10, 16 (¶ 17) (Miss. 2012); *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 751 (¶ 7) (Miss. 2003).

¶14. The trial judge was correct in holding that the equipment belonged to Sand Specialties and that Lampkin Construction had to return it. Lampkin Construction argues that the trial

court erred because his ruling contradicted two prior rulings.[2] Sand Specialties responds that, under Rule 54(b) of the Mississippi Rules of Civil Procedure, "a trial court may alter its decisions as litigation unfolds in order to facilitate effective resolution of issues." Rule 54(b) provides that, in the absence of a final judgment, any "order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Miss. R. Civ. P. 54(b). The Court has held that "any order signed during the course of the proceeding is not final and can be changed during the course of the action and prior to a final judgment." *Hubbard v. Wansley*, 954 So. 2d 951, 963 (¶ 40) (Miss. 2007) (quoting *Franklin v. Franklin ex rel. Phillips*, 858 So. 2d 110, 121 (¶ 37) (Miss. 2003)). Not only did the judge have the authority to change his prior rulings, the judge's directed verdict was not contrary to his prior rulings. Rather, he recognized that disputed issues existed that warranted a trial. Once the issues were fleshed out at trial, it became clear that the contract was unambiguous and that the equipment belonged to Sand Specialties.

¶15.   Lampkin Construction also argues that, by ruling that all of the mining equipment belonged to Sand Specialties, the trial judge "re-wrote Section 2.g. of the contract[,] which only required return of the Eagle Sand Classifier." We cannot agree. The plain language of subsection 2.g, set forth above, while specifically identifying the Eagle Sand Classifier,

---

[2] Lampkin Construction here refers to the trial court's January 2014 order denying Sand Specialties' motion for writ of replevin on the ground that factual and legal issues remained for adjudication before the writ could issue, and the July 2014 denial of Lampkin Construction's motion for partial summary judgment on the ground that genuine issues of fact existed for trial.

clearly covers all of the equipment covered under the contract. The judge did not err in finding that Sand Specialties held title to all of the equipment.

¶16. A directed verdict is appropriate where no reasonable juror could have reached a different conclusion. After review, if the Court determines that "reasonable jurors could not have arrived at a different verdict, the grant of a directed verdict must be affirmed on appeal." *Forbes v. Gen. Motors Corp.*, 935 So. 2d 869, 872 (¶ 3) (Miss. 2006). Under the plain language of the contract, no reasonable juror could have reached a different conclusion regarding ownership of the equipment. Therefore, Lampkin Construction's claims regarding the directed verdict are without merit.

## II. Whether the trial court erred in allowing the jury to consider evidence of damages for missing equipment.

¶17. Lampkin Construction asserts that, after the trial judge entered a directed verdict in favor of Sand Specialties regarding ownership of the equipment, the judge should not have let the jury consider damages for missing equipment. In other words, Lampkin Construction maintains that Sand Specialties was given duplicate relief because the judge ordered the equipment to be returned and the jury awarded damages for the missing equipment. Sand Specialties asserts that Lampkin Construction did not object during trial but rather raised the issue for the first time in its motion for JNOV, so the issue was waived. Further, Sand Specialties asserts that the trial court actually gave the instruction that Lampkin Construction requested, so Lampkin Construction cannot now maintain that the instruction was in error. As a general rule, "the trial court has considerable discretion when instructing the jury." *Utz v. Running & Rolling Trucking, Inc.*, 32 So. 3d 450, 474 (¶ 78) (Miss. 2010).

9

¶18. At the end of the trial, after both sides rested, the trial court directed a verdict on the issue of possession and ownership of the equipment and awarded it to Sand Specialties. The court made the ruling outside the presence of the jury. After the judge informed the attorneys that the equipment belonged to Sand Specialties and that it must be returned or replaced, Lampkin Construction asked the court not to tell the jury about the ruling. The following transpired:

> THE COURT: . . . I've also been requested by the parties not to inform the jury of the decision that the equipment be returned to the plaintiff in this case, and at the request of the parties, the Court will not inform the jury of that. For that reason, the Court has refused an instruction, a directed verdict P-9 because I do find that there's still certain issues relating to how much money the parties have paid, whatever the case may be.
>
> . . .
>
> MR. ELLIS: . . . From the defense position, while we don't agree with Your Honor's decision on the possession issue, we understand that's been made and that we would request that the jury not be informed which party is awarded possession.
>
> . . .
>
> THE COURT: . . . the Court has refused instruction D-8 and P-9 which were both peremptory instructions with the understanding by and between the parties that the Court has ruled on the issue of possession and have been requested by the Court to instruct the jury that possession is no longer an issue in this case. And I'll do that by telling the jury that.

Lampkin Construction then changed its mind and asked the judge to instruct the jury that the court had awarded possession and ownership to Sand Specialties. Lampkin Construction also requested a limiting instruction that would tell the jury that the court's ruling should not be construed as a finding for either party on the breach of contract claim or on the issue of

10

damages.

> MR. ELLIS: Can we go back on, Your Honor?  This is about what to do about -- what to tell the jury about your decision on possession.  I've now had a chance to talk with my client, and I'm sorry I spoke earlier without conferring with him, but we would like for the Court -- we make the request of the Court to inform the jury of your decision and to tell the jury who you have -- who you have decided gets the equipment, but we would like a limiting instruction from the Court to say that the jury not view that as a finding for either party on the breach of contract.

> . . .

> MR. ELLIS: . . . The Court is not making a decision on which party is entitled to damages, and my client, I believe, would suffer prejudice if the Court was to award possession to Sand Specialties, inform the jury of the same without informing them that that's not a finding of who breached the contract.  Or it's not a finding for either party.

> THE COURT: On the issue of damages.

> MR. ELLIS: Right.

> MR. LEMOINE: And I don't have a problem with that if it's phrased like that, but it's the Court's finding that Sand Specialties should be awarded possession of the property, the equipment[,] but that is not a finding on damages.

> THE COURT: On the issue of damages, if any.

> MR. LEMOINE: We agree with that.

The jury was called back in, and the judge told the jury about his ruling as Lampkin

Construction requested:

> THE COURT: . . . I also want to inform you, ladies and gentlemen, that the Court has ruled on one of the issues that was originally brought up in this trial. That was the issue of possession of the equipment that is in issue in this case; however, I have ruled that the equipment in this case should be returned to Sand Specialties, the plaintiff in this case; however, that has no bearing and has no effect on any issue of breach of contract or damages that may have occurred in this case.  That is for you to decide.  But the court has ruled on the

issue of possession of the equipment.

The jury returned a verdict in favor of Sand Specialties and awarded damages in the amount of $92,000.

¶19.   In response to Sand Specialties' claim that the court gave the instruction Lampkin Construction requested, Lampkin Construction asserts that the court omitted part of its directed verdict when "it failed to inform the jury that Lampkin Construction would be required to replace any missing or damaged pieces of equipment." The court's statement "I have ruled that the equipment in this case should be returned to Sand Specialties" was sufficient. Further, the court gave the instruction just as Lampkin Construction requested and Lampkin Construction did not object. Lampkin Construction did not mention replacement of missing or damaged equipment.  Lampkin Construction cannot now complain of an instruction that was given at its own request. **Barber v. Great S. Dev. Co.**, 249 Miss. 662, 163 So. 2d 735, 737 (1964) ("Appellant may not complain of these instructions in this respect for the reason that he requested and received an instruction presenting to the jury the same issue."); **Yazoo & M.V.R. Co. v. Wade**, 162 Miss. 699, 139 So. 403, 405 (1932) ("A party is bound by the position he assumes on the trial in reference to any particular matter and will not be heard to complain of the action of the court in taking the same position.  Hence the rule is universally accepted that a party cannot complain of an instruction given at his own request, or of error in an instruction given at the instance of his adversary, when others given at his request contain the same vice, or when he requests a substantially similar one.").

¶20.   Lampkin Construction claims that, even if it failed to object properly, the Court should

consider the issue under the plain error doctrine. Under the plain error doctrine, the Court "retains the inherent authority to notice error to prevent the manifest miscarriage of justice, despite trial counsel's failure to preserve the error." *Alpha Gulf Coast, Inc. v. Jackson*, 801 So. 2d 709, 727 (¶ 60) (Miss. 2001) (citing *Johnson v. Fargo*, 604 So. 2d 306, 311 (Miss. 1992)). To reverse for plain error, the Court "must find both error and harm." *Alpha Gulf Coast*, 801 So. 2d at 727 (¶ 60). The Court holds that there was no error, thus, the plain error doctrine does not apply.

¶21. Lampkin Construction also seems to imply that the forfeited $100,000 down payment was sufficient to cover any damages. Sand Specialties maintains that the $100,000 payment was not intended to offset damages. Rather, it "was a predetermined and agreed to amount to recompense Sand Specialties for lost sales to other ready, willing, and able buyers in the event Lampkin Construction failed to make the required payment." We agree with Sand Specialties. The $100,000 was a down payment that Lampkin Construction forfeited, not damages for breach of contract. The court did not rule on breach of contract or the damages resulting from said breach. The court left those issues for the jury. The Court holds that it was not error to allow the jury to consider damages after the directed verdict; further, the trial court's statement explaining the directed verdict was accurate and not an abuse of discretion.

### III. Whether the trial court's explanation to the jury of the court's directed verdict improperly intimated to the jury that it should find in favor of Sand Specialties.

¶22. Lampkin Construction claims that the trial court's announcement that the equipment should be returned to Sand Specialties swayed the jury, such that the jury inferred that the

trial court believed Sand Specialties should prevail on liability. As set forth in the previous section, Lampkin Construction asked the trial court to inform the jury of its decision regarding possession of the equipment. The trial judge's statement was a statement of its holding and nothing more. Lampkin Construction did not object when the trial court made its decision, and the trial court actually told the jury exactly what Lampkin Construction had requested. As stated above, Lampkin Construction cannot now complain of an instruction that was given at its own request. *See Barber*, 163 So. 2d at 737; *Wade*, 139 So. at 405. Further, since Lampkin Construction did not contemporaneously object in time for the judge to change the instruction, the argument is procedurally barred. *See Nunnally v. R.J. Reynolds Tobacco Co.*, 869 So. 2d 373, 378 (¶ 7) (Miss. 2004).

¶23. Finally, Lampkin Construction provides no evidence to support its assertion that the jury was influenced by the judge's ruling or his explanation thereof. The law presumes that the jury is competent, that the jury followed the court's instructions, and that the verdict reflects the jury's intent. *See Merchant v. Forest Family Practice Clinic, P.A.*, 67 So. 3d 747, 755 (¶ 17) (Miss. 2011); *Curry v. State*, 939 So. 2d 785, 790 (¶ 17) (Miss. 2006); *Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp.*, 743 So. 2d 954, 968 (¶ 39) (Miss. 1999). "[T]o presume otherwise would be to render the jury system inoperable." *Batiste v. State*, 121 So. 3d 808, 834 (¶ 17) (Miss. 2013) (citation omitted). Without any evidence to the contrary, the presumptions must prevail; the issue is without merit.

### IV. Whether the trial court abused its discretion in allowing the jury's award of $92,000 to stand.

¶24. Lampkin Construction claims that the jury's award of $92,000 in damages was based

on the testimony of Robin, Sand Specialties's owner, and that the trial court erred by allowing Robin to testify about the value and the deterioration of the equipment. Lampkin Construction claims that Robin was not admitted as an expert and that an owner trying to recover damages has to put on more evidence than his own estimates. Sand Specialties responds that an owner is competent to testify as to the value of his own property. Admissibility of witness testimony is reviewed for abuse of discretion. *Univ. of Miss. Med. Ctr. v. Pounders*, 970 So. 2d 141, 145 (¶ 13) (Miss. 2007); *K-Mart Corp. v. Hardy ex rel. Hardy*, 735 So. 2d 975, 983 (¶ 21) (Miss. 1999). "For a case to be reversed on the admission or exclusion of evidence, the defendant must show that it resulted in harm and prejudice to a substantial right of the defendant." *Irby v. Travis*, 935 So. 2d 884, 905 (¶ 56) (Miss. 2006); *Hardy*, 735 So. 2d at 983 (¶ 21).

¶25.    Rule 701 of the Mississippi Rules of Evidence pertains to the admissibility of lay witness testimony:

> If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to the clear understanding of his testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Miss. R. Evid. 701. We hold that Robin's testimony was admissible under Rule 701 because it was based on his personal knowledge about the equipment and on his perception of the deterioration of the equipment, and it was helpful in determining damages. While the value of specific equipment may be outside the realm of most lay witnesses' knowledge, as the owner of the equipment, Robin had personal knowledge of the value. The Court has held

15

that "individuals may testify as to the value of their own property." ***Cmty. Bank, Ellisville, Miss. v. Courtney***, 884 So. 2d 767, 774-75 (¶ 23) (Miss. 2004) (quoting ***Regency Nissan, Inc. v. Jenkins***, 678 So. 2d 95, 101 (Miss. 1995)).[3] The owner's estimate does not have to "be rationally based," and there is no predicate required other than ownership. ***Id.***

¶26. In the instant case, the trial court did not abuse its discretion by allowing Robin to testify to the value of his property and the effect of the deterioration. Robin testified that the equipment was worth more than $350,000 when sold, but he agreed to that price because he needed to move it. Robin saw the equipment about a year before the trial. He testified that the control panel for the Eagle Classifier and several other pieces of equipment were missing. In addition, water had been sitting on the equipment and had caused it to rust. Robin estimated the missing pieces to be worth $25,000 to $30,000. Due to the deterioration, Robin estimated the equipment to be worth about $150,000 less than when it was delivered. Robin also introduced invoices showing transportation and delivery costs totaling $16,020. Lampkin Construction claims that, according to Robin's testimony, the alleged damages totaled $191,020 to $196,020.[4] Thus, the jury must have taken that number and subtracted the $100,000 payment to get to the award of $92,000.

¶27. The trial judge allowed Robin's testimony over Lampkin Construction's objection. It was clear that Robin was providing estimates of the value based on his personal knowledge

---

[3] *See also* ***Robichaux v. Nationwide Mut. Fire Ins. Co.***, 81 So. 3d 1030, 1038 (¶ 22) (Miss. 2011) (quoting ***Regency Nissan, Inc. v. Jenkins***, 678 So. 2d 95, 101 (Miss. 1995)).

[4] Robin testified that the deterioration of the equipment amounted to a $150,000 loss in value. He estimated the missing equipment to be worth $25,000 to $30,000. And the delivery fees were $16,020. Thus, the alleged damages totaled $191,020 to $196,020.

about the equipment. He did not testify that the estimates were definite or based on anything other than his personal knowledge and what he saw of the equipment. Robin's testimony was permissible based on the cases cited above. Lampkin Construction's counsel did not cross-examine Robin about his valuations of the missing and deteriorated equipment, nor did Lampkin Construction provide any evidence to the contrary. It was not an abuse of discretion to allow Robin's testimony, nor was it error to allow the jury's verdict and award of damages to stand.

## CONCLUSION

¶28. Each issue raised by Lampkin Construction is without merit. The trial judge's directed verdict and the jury's award of damages are affirmed.

¶29. **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, PIERCE AND KING, JJ., CONCUR.**