371 So.2d 873 (1979)
WEST CASH & CARRY BUILDING MATERIALS OF McCOMB, INC.
v.
Leta Dunaway PALUMBO.
No. 51054.
Supreme Court of Mississippi.
June 6, 1979.
*874 Daniel, Coker, Horton, Bell & Dukes, John M. Roach, Robert S. Addison, Jackson, for appellant.
Gillis & Gillis, Norman B. Gillis, Jr., McComb, for appellee.
Before PATTERSON, C.J., and BROOM and BOWLING, JJ.
PATTERSON, Chief Justice, for the Court:
West Cash & Carry Building Materials of McComb, Inc. (hereinafter West) appeals from a judgment of $30,000 entered against it on April 4, 1977, in the Circuit Court of Pike County in favor of Mrs. Leta Palumbo for personal injuries arising out of a car/truck collision on September 3, 1975.
At the time of trial Mrs. Palumbo was sixty-two years of age, a widow and resident of McComb. On September 3, 1975, she was driving her 1975 Plymouth automobile in a westerly direction on Highway 98 into McComb. In obedience to a red signal light she stopped her automobile in its proper lane of traffic. Immediately afterward it was struck in the rear by a truck belonging to West, whereupon Mrs. Palumbo got out of her car, "feeling unstable," and stated to the truck driver: "Why did you do it? You have just bought you a new car." She subsequently entered the Southwest Mississippi General Hospital where she remained a patient until September 14.
The record is replete with brake problems West had with the truck. The driver, Herbert Grady, neither a party to this suit nor remaining in the employ of West, testified it would not stop on occasion and pumping the brakes was often required to bring it to a halt. He stated that on September 1 he nearly had an accident because of the faulty brakes and on September 2 refused to drive the truck. There is documentary evidence, conflicting somewhat with the above, that he purchased brake fluid for the truck on September 2 while using it about the business of West. On the morning of the accident Grady initially refused to drive the vehicle, but was told by his supervisor that a lawnmower needed to be conveyed to a purchaser and under this persuasion of the "boss" it was delivered. The accident occurred on the return trip.
Gary Peeples, Grady's supervisor, testified he used the truck on September 1 to deliver a mower to an adjacent city at which time the brakes were in proper condition. A mechanic for Eisworth Motors, a Ford distributorship, testified the brakes were "bled" and filled with fluid on April 25, 1975. Another mechanic of Eisworth testified he checked the brakes on August 22 preceding the accident on September 3 and found they did not need repairs. He also testified that after the accident he repaired the brakes which were then deficient. The officer who investigated the accident also stated his examination of the truck revealed the brakes were not functioning properly immediately after the collision.
*875 Unfortunately, Mrs. Palumbo has a previous history of physical infirmities. Her back was broken when she was eighteen, resulting in an operation upon the lower spine in 1958. In 1967 a tumor was surgically removed from her hip and later she suffered a stroke and since has undergone a hysterectomy and breast removal. Her physician discovered, after the accident, that she has degenerative arthritis. In treating her for injuries occasioned by the collision, he prescribed medication for pain, muscle relaxants, and advised extensive rest and the temporary use of a walker in moving about. The walker was eventually put aside although Mrs. Palumbo continued to wear a neck brace as an aid to her recovery. Appellee's physician, Dr. Moore, testified the accident contributed materially to the appellee's physical problems and that she would be in pain and crippled for the remainder of her life.
The testimony of an orthopedist established that the appellee has muscle spasms in the neck and tenderness in the spine. He observed that the appellee is very dramatic, has a psychological overlay with a tendency to overstate her physical problems, to make them worse than the physician's findings, and that her physical disabilities would be temporary in his opinion. He did testify, however, that the psychological overlay would not be abnormal, in his opinion, for a person with the many physical infirmities of Mrs. Palumbo.
Mrs. Palumbo wore a back brace and collar, which she obtained at Keesler Air Force Base Hospital, at the time of trial.
The appellant first suggests the trial court erred in denying its motion for a mistrial when one of appellee's witnesses stated the appellant had insurance. This comment occurred during the cross-examination of Herbert Grady, the truck driver, by counsel for the defendant. It follows:
Q. And what happened then? What did she see on the truck?
A. Well, she came back, after I hit the lady, I, I didn't even get out of the truck; I just set in the truck. And she immediately got out of her car. And, uh, she came back and said, "Well, I guess you know you just bought you a new car." And I said, "No ma'am, I've got insurance to take care of that", and I said, "I drive for West Building Materials", and which she did look on the truck and see that it was West Building Materials, and she just turned around and went back and got in her car on the offside, by the driver's side.
The appellee maintains the motion for a mistrial was not timely made. The comment was in response to a question by the defense attorney and, at worst, the testimony indicated the witness, not the defendant, had insurance.
The quoted testimony was given in the proceedings prior to the court recessing for lunch with no objection being interposed. The defendant moved for a mistrial when court reconvened in the afternoon. The motion, made out of the jury's presence, was overruled because it was untimely and because defense counsel had elicited the response.
West now contends a contemporaneous objection was not made because it would have been an unwise trial tactic drawing the jurors' attention to the comment and that the very mention of insurance is so prejudicial that delicate judgment is required to determine the appropriate time to object.
We think the assignment of error is without merit on both timeliness and its prejudicial effect. A survey of authority reveals our jurisprudence has long favored the contemporaneous objection rule but does not address an objection and a motion for mistrial in identical terms. In Anderson v. Jaeger, 317 So.2d 902 (Miss. 1975), the most recent and relevant authority, we find:
When, in the course of a trial before a jury, it is conceived that something has occurred of a prejudicial nature, an objection must be interposed at the time and the trial court thus be given an opportunity to rule. If the sustaining of the objection should then be considered incapable *876 of removing from the minds of the jury the supposed prejudicial effect of the matter objected to, the court then must be requested to instruct the jury that it be disregarded. If, the trial court having responded by so instructing the jury, the objector should still consider that the interests of his client have been irremediably prejudiced and that the actions of the trial court, although favorable, have not been effective in removing from the minds of the jury the prejudicial effect of the objectionable matter, then a motion must be made at the time for a mistrial... . Timely objections, followed by appropriate and timely motions, are necessary to preserve such points on appeal.
(317 So.2d at 906-7)
By analogy it would seem that if an objection be sustained to testimony thought to be objectionable, a motion for the court to admonish the jury to disregard would be in order immediately if the objector believes that prejudice has resulted. If, after admonishment, it is still thought that irreparable prejudice, incapable of being removed by admonishment, persists, a motion for a mistrial would be in order. Under the factual circumstance of this case we cannot state the trial court erred in its conclusion the motion for a mistrial was not timely made.
The general rule that insurance should not be mentioned before a jury has long been adhered to by this Court because it was thought to prejudice a defendant. Herrin v. Daly, 80 Miss. 340, 31 So. 790 (1902). However, the Court has indulged exceptions to the rule when both plaintiff and defendant conceded factually the protections of insurance, Chilcutt v. Keating, 220 Miss. 545, 71 So.2d 472 (1954), or when defense counsel has elicited a response from a witness concerning insurance. Mississippi Ice & Utilities Co. v. Pearce, 161 Miss. 252, 134 So. 164 (1931). More recently, and of great importance, a large discretion has been indulged the trial courts in ruling upon comments concerning insurance arising during a trial. In Copiah Dairies, Inc. v. Addkison, 247 Miss. 327, 153 So.2d 689 (1963), we stated:
Appellant assigns as error the failure of the trial court to grant a mistrial in connection with two occasions during the trial when reference was made to the "adjuster", once by appellee and once by a witness. Appellant contends that the effect of these references was to inform the jury that the case was being defended by an insurance company. The control of such matters rests largely within the sound discretion of the trial court and we are unable to say that he committed reversible error in this regard. ...
(247 Miss. at 339, 153 So.2d at 694; emphasis ours.)
The likelihood of the jury being prejudiced by the mention of insurance has been diminished in recent years because most jurors, and other citizens, as motorists share the common knowledge that most motorists, nearly all, have liability insurance in accord with statutory law. The trial judge whose duty it is to be attuned to the trial as it progresses is in the most advantageous position to correctly rule whether prejudice, or the lack of it, has emanated from the comment of a witness. Presently, we are of the opinion the trial judge did not abuse his discretion in denying the motion. Moreover, we think the comment of the witness was in response to interrogation by defense counsel, as found by the trial judge, leaving West in a position where it cannot now complain.
It is next contended that error was committed when the plaintiff's attorney asked Mrs. Palumbo during her direct testimony the following question:
Q. After the accident, did the McComb Police Department investigate this case?
A. Yes, sir.
Q. Do you know whether or not any citations were issued to the driver of the defendant's truck?
A. I understand there was... .
We think this question should not have been propounded as it had the potential of prejudicing the jury. However, an objection *877 was promptly sustained to it and the court instructed the jury to disregard the remark, voir dired the jury, and each of them responded that he would disregard any reference to the statement in considering his verdict. Under this circumstance we are of the opinion this assignment of error is not well taken. See Johnson v. State, 341 So.2d 660 (Miss. 1977); Hughes v. State, 179 Miss. 61, 174 So. 557 (1937); and Dabbs v. Richardson, 137 Miss. 789, 102 So. 769 (1925).
The next issue is central to the case, specifically, was the evidence on negligence so gross, wanton or intentional that it would warrant the granting of the punitive damage instruction? The appellant argues no evidence of malice or willful, wanton disregard for the others was proven, citing Vicksburg Railroad Power & Manufacturing Co. v. Marlett, 78 Miss. 872, 29 So. 62 (1901). The appellee, without citing authority, maintains the long history of brake problems with the truck, coupled with the directions of West's supervisor to Grady, the truck driver, to drive the defective vehicle amply justified the instruction.
The general rule, which needs no elaboration, concerning punitive damages is well stated in Teche Lines, Inc. v. Pope, 175 Miss. 393, 166 So. 539 (1936):
Appellee obtained an instruction permitting punitive damages, the instruction reading as follows: "The Court charges the jury for plaintiff that if from a preponderance of the evidence you believe that the driver of the bus was guilty of gross negligence, that is, of such negligence as evidenced a reckless disregard for the safety of passengers, then in addition to actual damages for injuries which plaintiff may have sustained as the proximate result thereof, you may, in your discretion, award exemplary or punitive damages."
It is the firmly established law in this state that punitive damages are recoverable not only for willful and intentional wrong, but for such gross and reckless negligence as is, in the eyes of the law, the equivalent of willful wrong. Godfrey v. Meridian Light & Ry. Co., 101 Miss. 565, 568, 58 So. 534. There is no precise definition of gross negligence, but one of the approximate definitions may be thus expressed: Gross negligence is that course of conduct which, under the particular circumstances, discloses a reckless indifference to consequences without the exertion of any substantial effort to avoid them. The facts of this case, as the statement thereof reveals, bring it well within that definition and principle. Compare Wilson v. State, 173 Miss. 372, 161 So. 744, wherein we affirmed a manslaughter conviction, as for culpable negligence, upon a state of facts in which the negligence was no more culpable than in the case now before us.
(175 Miss. at 400, 166 So. at 540)
The difficulty in deciding whether the punitive damage instruction should have been given arises from segregating part of the testimony and considering it in isolation. If the testimony of Grady, the truck driver, is so considered, the instruction was properly granted for the jury's guidance. His testimony establishes wanton or gross negligence because West had actual knowledge through Grady that the brakes were defective but with utter disregard for the safety of others directed its employee to drive the truck upon public highways. Snowden v. Osborne, 269 So.2d 858 (Miss. 1972). And see Yazoo & M.V.R.R. Co. v. Hardie, 100 Miss. 132, 55 So. 697 (1911), wherein following numerous Mississippi citations it is stated:
[A]ll holding that if there is any element of the testimony on which an instruction for punitive damage can be based, it is not error for the court to grant the instruction, and the question is one then for the jury and not the court. Authority on this point was not needed. This court has consistently held as above indicated in every proper case... .
(100 Miss. at 155, 55 So. at 973-4)
However, the testimony of the defendants, largely uncontradicted, reveals that West responded to the complaints concerning the truck's defects by carrying it to a reputable *878 mechanical concern for inspection and repair and also that it was driven by West's supervisor the day preceding the accident without difficulty. These facts cannot be disregarded because they are largely without contradiction. In this circumstance we believe the trial court erred in granting the punitive damage instruction because it permitted the jury to ignore the plausible and uncontradicted evidence of the defendant.
The Court is placed in a dilemma by the verdict since we cannot ascertain whether it was for punitive or actual damages. Unfortunately, the court was neither requested to nor did it instruct the jury to report its verdict so it would reflect separate awards for actual and punitive damages as was suggested by this Court in Capital Transport Co. v. McDuff, 319 So.2d 658 (Miss. 1975).
In sum, we hold the court erred in granting the punitive damage instruction. We further hold, however, that liability for actual damages has been established although some doubt exists that the award is excessive. Influenced somewhat by the appellee's age and physical condition, we are of the opinion that a remittitur of $10,000 conditioned on its acceptance by the appellee be directed in order to save the cost of further litigation and to terminate the suit.
We therefore hold that the cause should be reversed and remanded for a new trial unless within fifteen (15) days from June 6, 1979, the appellee accepts a remittitur of $10,000, reducing the judgment to $20,000. Otherwise, it is reversed and remanded for a new trial in accord with this opinion.
REVERSED AND REMANDED FOR A NEW TRIAL UNLESS APPELLEE ACCEPTS A REMITTITUR OF $10,000 WITHIN FIFTEEN (15) DAYS BEGINNING WITH JUNE 6, 1979.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.