573 So.2d 776 (1990)
John M. BEAMAN, M.D.
v.
Van E. HELTON and Vivian Wynelle Helton.
No. 89-IA-0588.
Supreme Court of Mississippi.
December 19, 1990.
*777 J. Robert Ramsay, Nancy E. Steen, Bryant Colingo, Williams Clark Ramsay & Hammond, Hattiesburg, for appellant.
E. Fred Dobbins, Leakesville, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and BLASS, JJ.
BLASS, Justice, for the Court:
This is a medical malpractice case. Van E. Helton, now deceased, and Vivian Helton, plaintiffs below and appellees here, brought suit against Dr. John Beaman for failure to inform them of a certain abnormality which appeared in the x-rays of Mr. Helton at his physical examination made at the request of the Disability Determination Service (DDS) of the Social Security Administration. Dr. Beaman's motion for summary judgment was denied and on May 4, 1989, this Court granted an interlocutory appeal on the question of whether a physician-patient relationship existed between Mr. Helton and Dr. Beaman.
The essential facts are not disputed. Mr. Van Helton sought social security benefits and his examination was ordered by the Disability Determination Service of the Department of Rehabilitation of the State of Mississippi and Dr. Beaman was employed by DDS to conduct the examination. Mr. Helton did not select or pay Dr. Beaman. Dr. Beaman had not treated him before, nor was he to treat him afterwards. X-rays were made of Mr. Helton during examination and after Mr. Helton had left Dr. Beaman's office a study of the developed x-ray film revealed, in Dr. Beaman's opinion, "probable pulmonary malignancy." That same evening he dictated his report by telephone directly to DDS, specifically stating his impression that Mr. Helton had a probable pulmonary malignancy, and "strongly" recommended that the DDS examiner contact Mr. Helton so that he could contact his personal physician and that he be advised to "follow up this problem." Dr. Beaman concluded in his report "Impression: probably pulmonary malignancy." DDS failed to contact Mr. Helton and inform him of the abnormality observed and reported by Dr. Beaman. Mr. Helton did not discover the fact that he had a malignancy until July of 1986, after the Social Security Administration had denied his claim of disability benefits.
Regardless of what may have been the consequences of the delay in starting chemotherapy for the treatment of this malignancy, Dr. Beaman contends that there can be no liability imposed on him as a result of the failure of DDS to timely notify Mr. Helton of the doctor's findings because there was no physician/patient relationship between Mr. Helton and Dr. Beaman. The plaintiff concedes that there was no physician/patient relationship but contends that the doctor's dictating his report by telephone to a tape recorder in the DDS office was not in compliance with the regulations of DDS. That statement is made in the brief in the Statement of Facts, but is *778 nowhere else addressed or further asserted in the brief. Helton agrees that Dr. Beaman would not have been liable had he failed to diagnose, or to treat, or had he misdiagnosed a condition. He asserts that Dr. Beaman correctly diagnosed the malignancy, noted it and dictated a report by telephone to the tape recorder, which included his impression of the probable pulmonary malignancy. The appellant's brief does not explain how this action on Dr. Beaman's part constituted a breach of any duty owed to Mr. Helton.
This Court has uniformly held that a physician/patient relationship must be established in order to make out a prima facie case of medical malpractice. Thompson v. Carter, 518 So.2d 609 (Miss. 1987); Boyd v. Lynch, 493 So.2d 1315 (Miss. 1986); Hammond v. Grissom, 470 So.2d 1049 (Miss. 1985); Satcher v. Wiser, 483 So.2d 694 (Miss. 1986). As stated above, all parties agree that no such relationship existed between the person being examined and the doctor in this case. See also, L. Frumer, Personal Injury, § 1.02[2][b] (1987). Dr. Beaman, in his brief, sets out a number of cases in other states holding that, in fact situations similar to the one here, there was no physician/patient relationship created. As stated above, that question is not disputed and, as a matter of law and in the face of that admission, we must hold that no such relationship existed.
The appellee, plaintiff below, seems to assert, however, that there is some duty owed by the physician to the examinee outside of the physician/patient relationship, citing the dissent in Peace v. Weisman, 186 Ga. App. 697, 368 S.E.2d 319 (1988). That dissent argues that the application of the strict definition of physician/patient relationship produces the "intolerable result" reached by the majority. The majority opinion, however, accords with the earlier decisions of this Court. The plaintiff cites two Maryland cases, Hoover v. Williamson, 236 Md. 250, 203 A.2d 861 (1964) and Betesh v. United States, 400 F. Supp. 238 (D.D.C. 1974), and one case from Ohio, Meinze v. Holmes, 40 Ohio App.3d 143, 532 N.E.2d 170 (1987) which appear to impose a duty upon the examining physician that is independent of the physician/patient relationship. This Court has held to the contrary and, certainly under the facts existing in this case, we are not willing to extend or disturb the established rule in this state. We observe that the "Medical Examination Guidelines for Consultative Physicians" furnished by Disability Determination Services to the examining physician contains this language:
It is considered desirable to make significant medical information from consultative examinations available to the attending physician or medical institution for treatment purposes, provided the individual authorizes such release. Referral to the claimant's treating source is particularly important where the information reveals a previously undiagnosed condition that may require immediate treatment. Our agency is responsible for making prompt identification and referral of consultative examination reports to attending physicians when the examination reflects diagnostic information or test results which would be of significance to the claimant's treatment. However, you, the consultative physician, are requested to notify the examiner handling the case immediately if you suspect a life-threatening condition, and we will immediately take steps to notify a treating physician. If the file reveals there is no treating source, or if the treating source is not known, our Agency advises the claimant in writing to see a physician for additional testing. You may, at your discretion, advise the claimant, while he is still in your office, when you feel he/she should see a treating physician for additional diagnostic studies.
It appears that Dr. Beaman complied with the provisions of the manual and in so doing discharged his duty to the examinee.
Accordingly, it being conceded that no relationship of physician and patient existed between the examinee and Dr. Beaman, and the evidence before the Court making it clear that Dr. Beaman breached no duty owed to the examinee, summary judgment should have been for the defendant.
REVERSED AND RENDERED.
*779 ROY NOBLE LEE, C.J., HAWKINS, P.J., PRATHER, ROBERTSON and ANDERSON, JJ., concur.
SULLIVAN, J., dissents, joined by DAN M. LEE, P.J., and PITTMAN, J.
SULLIVAN, Justice, dissenting:
The majority's holding that summary judgment should have been in favor of Dr. Beaman, the defendant below, is based on the finding that the Heltons conceded that no relationship existed between Dr. Beaman and Mr. Helton, the examinee, and that the evidence before this Court clearly proved that Dr. Beaman breached no duty to the examinee. Had the Heltons in fact made such an admission and had the issue before us been to review the circuit court judge's finding that the evidence presented in the motion for summary judgment proved that Dr. Beaman breached no duty, I would agree with the majority under those limited circumstances.
However, there was no such admission from the Heltons and there was no finding by the trial judge on the evidence presented on the motion for summary judgment. In this interlocutory appeal we are presented with one issue only: whether a "nontraditional" doctor-patient relationship is created when a physician examines an individual at the request of a third party, and if not, whether a doctor owes a duty despite the absence of a doctor-patient relationship. Under the circumstances of this case I would find that Dr. Beaman owed Mr. Helton a duty to act with reasonable care regardless of the existence of a doctor-patient relationship.
When Dr. Beaman examined Mr. Helton, a relationship was established to the extent that Mr. Helton could reasonably expect Dr. Beaman to notify him of a life threatening condition which required immediate treatment. This relationship may be said to arise either from a limited extension of the "traditional" doctor-patient relationship or from our general law of negligence applied when one undertakes to act. It is unconscionable to deny recovery for damages caused to an examinee by a physician's negligence when the physician has acted positively in examining an individual at the request of and payment by a third party. While the duty owed should not be coextensive to the duty owed to "traditional" patients whom a physician has agreed to treat medically, a duty should be imposed to the extent of the examination. I would remand this case to determine whether there exist genuine issues of material fact as to breach of duty, proximate cause, and damages.
There is no question that Dr. Beaman examined Mr. Helton at the request of the Disability Determination Service. Dr. Beaman took a chest x-ray of Mr. Helton and while reading the x-ray discovered a spot on Mr. Helton's lung which indicated that Helton likely had a malignant tumor. At that time rather than make a phone call to the examinee which would have taken at most five minutes, Dr. Beaman left a recorded message of his findings with the Disability Determination Services with the expectation that they would tell Mr. Helton that he needed to seek immediate treatment. Regrettably the agency did not relay the message and two months passed before Helton went to see another physician. While two months may seem an insignificant amount of time to those of us who have never faced the battle with cancer, it may have been possible with surgery to remove the tumor from the lung before it metastasized or to put the tumor into remission with radioactive treatment and/or chemotherapy. But, this issue is not before us. Today we decide whether in the absence of a "traditional" doctor-patient relationship a physician hired by the Disability Determination Services to examine an individual seeking disability benefits owes a duty to disclose a newly discovered life threatening condition which is unknown to the examinee. Under such circumstances, what, if any, duty does one human owe to another?

I.
Before addressing the issue presented by the instant case, I first will address some problems I have with the majority's opinion. The majority cites Thompson v. Carter, *780 518 So.2d 609 (Miss. 1987); Boyd v. Lynch, 493 So.2d 1315 (Miss. 1986); Satcher v. Wiser, 483 So.2d 694 (Miss. 1986); and Hammond v. Grissom, 470 So.2d 1049 (Miss. 1985), for the proposition that "[t]his Court has uniformly held that a physician/patient relationship must be established in order to make out a prima facie case of medical malpractice." It should be noted that this statement was not a holding in any of the cases cited by the majority. In Thompson, 518 So.2d at 611, this Court in dicta cited Boyd, 493 So.2d at 1318, and Hammond, 470 So.2d at 1053, in part for that proposition. A perusal of Boyd and Hammond shows that neither case specifically holds or states that such a relationship must be established. Moreover, the doctor-patient relationship was obvious and was not at issue in Thompson, Boyd, or Hammond.
Satcher v. Wiser, 483 So.2d 694, 696 (Miss. 1986), [quoting Couch v. Martinez, 357 So.2d 107, 111 (Miss. 1978) (Sugg, J., dissenting)] does stand for the proposition, but only as dicta. If the majority chooses to change its opinion, Robinson v. Hawkins, 541 So.2d 1048, 1050 (Miss. 1989); Ladner v. Campbell, 515 So.2d 882, 887 (Miss. 1987); and Satcher v. Wiser, 483 So.2d 694, 696 (Miss. 1986), [quoting Couch v. Martinez, 357 So.2d 107, 111 (Miss. 1978) (Sugg, J., dissenting)] may be cited as dicta for the majority's statement.[1]
Next the majority states that all parties agree that no doctor-patient relationship existed. What the Heltons actually allege is that the relationship is not a "classical" one, and that even should it be found that no relationship was established, the physician owed Helton a duty under the general laws of negligence to disclose the life threatening condition by virtue of Dr. Beaman undertaking an examination of Helton. Thus, I find that the majority's reliance on this concession is misleading.
The majority next states that this Court has held contrary to the Heltons' argument that a duty is owed by the physician to the examinee outside the physician-patient relationship and "[c]ertainly under the facts existing in this case, we are not willing to extend or disturb the established rule in this state." The purpose of this interlocutory appeal is precisely because we have not previously addressed this issue. What we are considering today is whether under the facts of this case a "nontraditional" relationship was established such that the physician can be held to the standard of care that he must act carefully with respect to the examination he provided. In the event we find there is no relationship established by the facts of this case, then we are to decide whether the physician owed the examinee a general duty of care under our general laws of negligence to act carefully to the extent of the examination administered to Mr. Helton.
The majority next states that there is no duty owed outside the doctor-patient relationship. Then, the majority in summary fashion, finds that the evidence clearly proves that there was no breach of the duty owed. The physician either owes a duty or he does not. It cannot be both.
Moreover, the evidentiary issue is not before this Court as the trial court made no determination that Dr. Beaman breached a duty. We sit as an appellate court, not finders of fact. UHS-Qualicare, Inc. v. Gulf Coast Community Hosp., Inc., 525 So.2d 758, 763 (Miss. 1988) (cites therein). If a duty is owed either by a limited extension of the "traditional" doctor-patient relationship or under our general law of negligence, then the case should be remanded to the circuit court to determine whether there is a genuine issue of material fact whether the duty was breached. I reiterate that the issue presented on appeal to this Court is whether a doctor-patient relationship existed between the parties, or in the alternative whether in the absence of a doctor-patient relationship must a doctor who assumes to act, act carefully with respect to the examination.

II.
An individual may be required to undergo a physical examination on behalf of a *781 third party for a number of reasons. See, Green v. Walker, 910 F.2d 291 (5th Cir.1990) (continued employment); Peace v. Weisman, 186 Ga. App. 697, 368 S.E.2d 319 (1988) (disability benefits); Meinze v. Holmes, 40 Ohio App.3d 143, 532 N.E.2d 170 (1987) (insurance); LoDico v. Caputi, 129 A.D.2d 361, 517 N.Y.S.2d 640 (1987) (workers' compensation); Beadling v. Sirotta, 41 N.J. 555, 197 A.2d 857 (1964) (prospective employee). Such examinations are not part of medical treatment and are generally paid for by the third party. We previously have not determined whether a doctor-patient relationship is established or whether a duty of care is owed by the physician to the examinee in such instances. A review of other states shows that the courts are not in accord on these issues. See, Physician's Duties and Liabilities to Person Examined Pursuant to Physician's Contract with such Person's Prospective or Actual Employer or Insurer, 10 A.L.R.3d 1071, 1074. The general rule, however, is that a physician's duty to exercise reasonable care for his patient stems from the doctor-patient relationship. Physician's Duties and Liabilities to Person Examined Pursuant to Physician's Contract with such Person's Prospective or Actual Employer or Insurer, 10 A.L.R.3d 1071, 1074.
While we have previously in dicta stated that a doctor-patient relationship is necessary to maintain a medical malpractice action, we have not indicated the manner in which such a relationship is established. Satcher v. Wiser, 483 So.2d 694, 696 (Miss. 1986) [quoting Couch v. Martinez, 357 So.2d 107, 111 (Miss. 1978) (Sugg, J., dissenting)]; see also, Robinson v. Hawkins, 541 So.2d 1048, 1050 (Miss. 1989); Ladner v. Campbell, 515 So.2d 882, 887 (Miss. 1987). Unquestionably, in the instant case the relationship between a physician and an examinee is not a "traditional" one. The issue we decide is whether we will extend our standard of care owed by a physician to his patient in a "traditional" relationship to the instant case, or in the alternative whether in the absence of a doctor-patient relationship a duty of care is owed when a physician undertakes to examine an individual at the request of and payment by a third party.
Most courts addressing similar issues have found that no doctor-patient relationship exists. See e.g., Green v. Walker, 910 F.2d 291, 293 (5th Cir.1990) (dicta), (cites therein); Peace v. Weisman, 186 Ga. App. 697, 368 S.E.2d 319, 321 (1988); Hoover v. Williamson, 236 Md. 250, 203 A.2d 861, 863 (1964) (cites therein). Some courts, however, find that the physician's act of examining the individual creates a doctor-patient relationship to the extent of the examination. See e.g., Green v. Walker, 910 F.2d 291, 296 (5th Cir.1990) (applying La. law); Betesh v. United States, 400 F. Supp. 238, 247 (D.C. 1974). Other courts find that although there is no "traditional" doctor-patient relationship there still is a general duty to act carefully based on general laws of negligence. See e.g., Peace v. Weisman, 186 Ga. App. 697, 368 S.E.2d 319, 325 (1988) (dissent); Meinze v. Holmes, 40 Ohio App.3d 143, 532 N.E.2d 170, 173-74 (1987); LoDico v. Caputi, 129 A.D.2d 361, 517 N.Y.S.2d 640, 641-42 (1987) (dicta); Betesh v. United States, 400 F. Supp. 238, 245 (D.C. 1974) [citing Hoover v. Williamson, 236 Md. 250, 203 A.2d 861 (1964)]; Beadling v. Sirotta, 41 N.J. 555, 197 A.2d 857, 860 (1964). In either event without question the physician's duty of care is not coextensive with the duty owed to a physician's patients who the physician has agreed to treat medically. Beadling v. Sirotta, 41 N.J. 555, 197 A.2d 857, 860-61 (1964); Physician's Duties and Liabilities to Person Examined Pursuant to Physician's Contract with such Person's Prospective or Actual Employer or Insurer, 10 A.L.R.3d 1071, 1073.
The Fifth Circuit extended the traditional doctor-patient relationship and imposed a duty of care on a physician examining an employee as part of an annual employment physical in a recent case. Green v. Walker, 910 F.2d 291, 295 (5th Cir.1990) (applying La. law). The court held that the examination created a relationship between the physician and the examinee to the extent of the tests conducted, and additionally imposed a duty to take reasonable steps *782 to disclose to the examinee any findings that pose an imminent danger to the examinee's health. Id. at 296.
In Meinze v. Holmes, 40 Ohio App.3d 143, 532 N.E.2d 170 (1987), the court found there existed no doctor-patient relationship between a physician examining an insured on behalf of an insurance company. Meinze, 532 N.E.2d at 173. However, the court then found that a physician had a duty to disclose "when a reasonable physician of ordinary skill and diligence would disclose a significant risk or danger to the person being examined." Id. at 173-74. See also, Betesh v. United States, 400 F. Supp. 238, 245 (D.C. 1974); Beadling v. Sirotta, 41 N.J. 555, 197 A.2d 857, 860 (1964); Hoover v. Williamson, 236 Md. 250, 203 A.2d 861, 863 (1964).
The Restatement (Second) of Torts, Sec. 323 (1965), also lends support to imposing a general duty of care on a physician who undertakes to examine another even in the absence of a doctor-patient relationship. See Peace v. Weisman, 186 Ga. App. 697, 368 S.E.2d 319, 324 (1988) (dissent); Hoover v. Williamson, 203 A.2d at 863. It states in pertinent part that:
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
(a) his failure to exercise such care increases the risk of such harm, or
(b) the harm is suffered because of the other's reliance upon the undertaking.
In our state when a physician undertakes to treat a patient in a "traditional" doctor-patient relationship, he is held to the standard of using minimally sound medical judgment and rendering minimally competent care in the course of services he provides. Walker By and Through Walker v. Skiwski, 529 So.2d 184, 185 (Miss. 1988); Hall v. Hilbun, 466 So.2d 856, 866 (Miss. 1985). The care must be consistent with the circumstances of the case and the level of expertise the physician holds himself out as possessing. Walker, 529 So.2d at 185; Hall, 466 So.2d at 869.
However, even were this Court to find no doctor-patient relationship, Doctor Beaman would still owe Helton a common law duty to conduct the examination carefully. In our state the law imposes a common law duty to exercise due care on those who undertake to act. See e.g., U.R.S. Co., Inc. v. Gulfport-Biloxi Regional Airport Authority, 544 So.2d 824 (Miss. 1989); Faulkner Concrete Pipe Co. v. Fox, 248 Miss. 50, 56, 157 So.2d 804, 805 (1963); Dr. Pepper Bottling Co. of Miss. v. Bruner, 245 Miss. 276, 282, 148 So.2d 199, 201 (1962).
As a general rule, it is the natural inherent duty owed by one person to his fellowmen, in his intercourse with them, to protect life and limb against peril, when it is in his power to reasonably do so. The law imposes upon every person who undertakes the performance of an act which, it is apparent, if not done carefully, will be dangerous to other persons or the property of other persons, the duty to exercise his senses and intelligence to avoid injury, and he may be held accountable at law for an injury to person or to property which is directly attributable to a breach of such duty. The duty so arising is absolute. The law requires nothing more; it will excuse nothing less than performance, although the degree of care to be exercised is relative to the circumstances of the case.
U.R.S. Co., Inc. v. Gulfport-Biloxi Regional Airport Authority, 544 So.2d 824 (Miss. 1989) (citing 38 Am.Jur. Negligence, pp. 656-67); Faulkner Concrete Pipe Co. v. Fox, 248 Miss. 50, 56, 157 So.2d 804, 805-06 (1963) (citing 38 Am.Jur. Negligence, § 14, pp. 656-67); Dr. Pepper Bottling Co. of Miss. v. Bruner, 245 Miss. 276, 282, 148 So.2d 199, 201 (1962) (citing 38 Am.Jur.Negligence, § 14, pp. 656-67); State for Use of Nat'l Surety Corp. v. Malvaney, 221 Miss. 190, 210-11, 72 So.2d 424, 431 (1954).
Negligence "[i]s the failure of one owing a duty to another to do what a reasonable and prudent person would ordinarily have done under the circumstances... ." Cole *783 v. Delchamps, Inc., 246 Miss. 846, 152 So.2d 911, 913 (1963) [citing 38 Am.Jur., Negligence, par. 2, p. 643]; see also, Smith v. City of West Point, 475 So.2d 816, 817 (Miss. 1985) (negligence connotes a failure to exercise reasonable care under the circumstances). What is reasonable care may vary with the circumstances. Smith, 475 So.2d at 818 [citing Knapp v. Stanford, 392 So.2d 196, 199 (Miss. 1980)].
Because Dr. Beaman took positive action in undertaking to examine Mr. Helton, I have no difficulty extending the standard of care from the "traditional" doctor-patient relationship to apply to the circumstances of this case. I would not find the duty coextensive with that of a "traditional" relationship and would limit it to the extent of the examination and treatment, if any. In the alternative, I would find that by undertaking to act a duty was created under our general laws of negligence to act as a reasonable and prudent person under the circumstances. Thus, while Dr. Beaman had no duty to examine Mr. Helton beyond the needs of the Disability Determination Agency, once a life threatening condition unknown to the examinee was discovered, I would find a duty to disclose because once the chest x-ray was taken Mr. Helton had a reasonable expectation of being advised of any abnormal findings. Whether the physician breached his duty to disclose is a question of fact for the lower court to determine. I would remand this action for further determinations as to whether there exist any genuine issues of material fact in the motion for summary judgment.
DAN M. LEE, P.J., and PITTMAN, J., join this dissent.
NOTES
[1] It should be noted that none of the cases cited by the majority provides guidance as to the manner in which a doctor-patient relationship must be established.