603 So.2d 866 (1992)
Albert L. MEENA, M.D.
v.
Flora B. WILBURN.
No. 90-CA-1178.
Supreme Court of Mississippi.
June 17, 1992.
*867 Clifford B. Ammons, James A. Becker, Jr., Gregg A. Caraway, Watkins & Eager, Jackson, for appellant.
Steve Younger, Henry D. Granberry, III, Whitman B. Johnson, III, Steen Reynolds Dalehite & Currie, Jackson, for appellee.
En Banc.
PRATHER, Justice, for the Court.

I. INTRODUCTION
Flora B. Wilburn instituted this negligence action against Albert L. Meena, a surgeon, and Juleigh Greer, his nurse, for injuries arising from a procedure performed on the wrong patient. At the Hinds County Circuit Court, a jury returned a verdict against Meena in the amount of $125,000, but exonerated Greer of any liability. Meena appealed. This Court affirms.

1. The Facts
The facts of this unusual case are, for the most part, undisputed. In the latter half of 1987 at the Russell C. Davis Planetarium in Jackson, Mississippi, 36-year-old Flora B. Wilburn, a custodian, was busy cleaning when she bumped her right leg and "nicked" it. The "nick" developed into an ulcer because of poor blood circulation. As time progressed, the ulcer worsened  particularly due to her diabetic condition. She visited her primary physician, who referred her to Dr. Mike Maples, a vascular surgeon. Maples admitted her to the Mississippi Baptist Medical Center and performed an operation on her "to save her leg." The surgery entailed making an incision "from the groin all the way along ... the right leg down to [inches] below the knee."[1] The surgery was a success and, according to Maples, Wilburn was "doing acceptably well."
Two days following surgery, Dr. Albert L. Meena was at the hospital "covering" for one of his partners, Dr. Petro, who had asked Meena to remove the staples[2] from *868 one of his patients, 65-year-old Dora Slaughter. Slaughter shared a semi-private room with Wilburn. Meena testified about what happened next:
I went and picked up [Slaughter's] chart [at the nurse's desk and asked o]ne of the nurses ..., "Which bed is Dora Slaughter in," and I was led to believe she was in the bed next to the window. I picked up the chart along with [my nurse,] Juleigh Greer,[3] [who accompanied] me. We opened the door. I called out Dora Slaughter's name in a loud voice after I got in the room. The patient next to the window  next to the door was lying in the bed with the sheet over it and never responded. I could not see the age or anything of the patient. The patient sitting in the chair next to the window looked up at me as if to acknowledge that she were Dora Slaughter, and I went over to the bedside, and she was sitting in a chair, and I told her, "I'm Dr. Meena. I work with Dr. Petro, and we need to remove your staples out of your leg." She never said a word. About that time I got the call that Mr. Younger was discussing. I went to the phone at the desk and found out it was an emergency, and I immediately told Juleigh to take the staples out, and I went to St. Dominic Hospital.
Rec. Vol. II, at 74.
Wilburn testified that she tried in vain to dissuade Meena and his nurse from removing the staples:
Well, they came  they came over to my bed, and they told me that they had to remove my staples. I said, "No. I'm sorry. You must be mistaken because I just had surgery." And I kept telling them, and so they went out of the room, and Nurse Greer came back in the room, and she said, "I must remove your staples." I said, "No. You must be mistaken because I just had surgery." She said, "Well, Dr. Meena told me to remove your staples." I said, "No." I said, "I just had surgery." I constantly kept telling her, "No. You must be mistaken. I just had surgery."
Vol. III, at 265-66. Wilburn added that neither Meena nor Greer asked her who she was or even bothered to "look at [her] arm band" which revealed her name. Meena admitted that he did not examine Wilburn or her leg.
Greer conceded during her testimony that, before removing staples from a patient, a nurse "should read the chart, be familiar with the chart, look at the patient's arm band and compare the arm band to the chart"  all of which she failed to do. Greer rationalized her failure: "[W]hen the doctor I work for is standing at the foot of a patient's bed, I would have no doubt  no reason to doubt what he tells me to do."
Greer proceeded to remove the staples, which was an "uncomfortable" and "painful" experience for Wilburn. Greer removed "eight or nine staples"  "could have been more, could have been less." She removed the staples notwithstanding her realization "that there was a problem"; Wilburn's skin split "wide" open  revealing the "scubcu" or layer of fat under the skin. Greer stopped the procedure, exited the room, checked the charts, and realized she had removed staples from the wrong patient. At that point, she encountered Maples (Wilburn's surgeon), who immediately re-stapled the skin (using ten to twelve staples).
Days later, Wilburn's health began to falter. Wilburn had a fever of 101°, and the tissue where the staples had been removed had become infected. Her primary physician, Dr. Robert Evans, prescribed medication; this seemed to lead to an improvement in her condition. However, weeks later, Wilburn returned to Evans with a fever, chills, and other symptoms of a worsening infection. Evans ultimately re-admitted her to the hospital; she remained *869 there for approximately 22 days  during which time she underwent more surgery and received intensive care for the infection.
Wilburn testified that she continued to experience pain upon being discharged from the hospital in May 1988. However, she testified that she remained on medication, rested when possible, used crutches, and regularly changed the dressing on the infected area. Her condition gradually improved and, presumably, she has recovered completely with the exception of some scarring and skin "indention."

2. The Suit
In June 1988, Wilburn filed a complaint against Meena and Greer in the Hinds County Circuit Court. Wilburn alleged that the infection, pain, suffering, and loss of wages resulted from the their negligent acts. Wilburn requested an unspecified amount of actual and punitive damages.
Meena and Greer answered: (1) that the removal of staples did not cause the infection and other injuries, and (2) that Wilburn was negligent for failing to inform them that she was not the right patient.

3. The Trial
Judge Mark Sledge held trial in September 1990. At the conclusion of Wilburn's case,[4] the defense moved for a directed verdict. The motions were denied in part. Judge Sledge directed a verdict in favor of Meena and Greer on the issue of punitive damages. He then granted Wilburn's request for two peremptory instructions on liability. The judge granted the instructions simply because Meena and Greer both admitted that they "deviated from the standard of care" with which they should have complied. See, e.g., Vol. III, at 397-98. Thus, the issue left for the jury to resolve was whether the defendants' admitted breach of duty proximately caused Wilburn's injury (the infection).

4. The Verdict
After four days of trial, the jury returned a verdict against Meena and assessed damages in the amount of $125,000. The jury declined to hold the nurse liable for Wilburn's injuries.
Wilburn did not challenge the jury's exoneration of Greer. Meena, however, filed motions for a j.n.o.v., new trial, or remittitur  all of which the judge denied.

5. The Issues
In November 1990, Meena appealed and presented six main issues, which are analyzed in the next Section.

II. ANALYSIS

A. Issue: Whether the lower court erred in not dismissing this action, or granting a directed verdict or peremptory instruction in favor of defendants as a result of plaintiff's failure to prove there was a physician-patient relationship and having further failed to allege or prove an assault and/or battery?
As discussed, Wilburn sued under the theory of negligence. Meena contends that the only cause of action which Wilburn could have instituted against him was for assault and/or battery. Meena explains that "there must be a physician-patient relationship or else a battery will result from an unauthorized medical procedure." Meena's Brief at 8.

1.
Meena's contention  that no medical malpractice or medical negligence action may be instituted in the absence of a doctor-patient relationship  seems to be based on his construction of Beaman v. Helton, 573 So.2d 776 (Miss. 1990). Admittedly, Beaman seems to mean what Meena construes it to mean. Careful reconsideration of Beaman has led this Court to conclude that a doctor may be held liable for negligence if the traditional elements  duty, breach of duty, causation, and injury  are evidenced. And such liability is *870 not negated by the absence of a doctor-patient relationship.[5] As Justice Sullivan similarly and astutely observed in his Beaman dissent, the question one must ask in a malpractice or negligence action is whether the doctor owed a duty of care  "despite the absence of a doctor-patient relationship." Id. at 779. The presence or absence of a doctor-patient relationship is simply a factor to consider in determining the type or nature of duty owed, if any, to the injured patient or non-patient. See, e.g., Ebaugh v. Rabkin, 22 Cal. App.3d 891, 895, 99 Cal. Rptr. 706, 709 (1972);[6]Meier v. Combs, 147 Ind. App. 617, 263 N.E.2d 194, 200 (1970);[7]Gill v. Selling, 125 Or. 587, 267 P. 812, 814 (1928).[8]
Indeed, throughout this case, Meena admitted to breach of a duty to which he was bound. He made the admissions: (1) in his answer to Wilburn's complaint (Vol. I, at 34); (2) in his opening statement (Vol. II, at 29 & 32); (3) through his testimony (Id. at 42-43 & 54); (4) through his objections (Vols. III & IV, at 266 & 460); and (5) during the debate over jury instructions (Vol. IV, at 542, 543 & 545).[9]
On the basis of the foregoing, this Court hereby overrules Beaman to the extent that it holds that a negligence action may not be instituted in the absence of a doctor-patient relationship.

2.
In sum, Wilburn may have had more than one theory of recovery available to her. She chose, however, to institute an action under only one theory  negligence. Her choice was not an improper one. Therefore, this Court affirms on this issue.

B. Issue: Whether the applicable one-year statute of limitations for intentional torts bars this claim, due to the fact that at the time of trial plaintiff had failed to allege assault and/or battery and the one-year statute had run at the time of trial?
This Court's disposition of the preceding issue renders this issue moot.

C. Issue: Whether the lower court erred in not granting a new trial at *871 least on damages or in dismissing this cause, due to the fact that plaintiff failed to relate her medical bills to the injuries complained of?

Meena requested a new trial on the basis of Wilburn's failure to prove that her medical bills were causally connected to his breach of duty. The judge denied the request  a decision which Meena challenges in this appeal. In addition to his questioning of whether a causal connection exists, Meena questions the "reasonableness and necessity" of the bills, as well as the prejudicial effect of their introduction. Meena fails, however, to explain how the bills were unreasonable, unnecessary, and prejudicial. See Meena's Brief at 12-16.
The record reveals that the trial judge permitted Wilburn to introduce the medical bills per a documented "Stipulation" which all parties signed:
It is hereby stipulated between all parties that the hospital records numbered 000-378 are true and correct copies of all the hospital records of Flora B. Wilburn in connection with this case and all parties stipulate to the introduction into evidence of said records.
See Supplemental Vol. at 3. Thus, Meena cannot now complain about their introduction and consequential prejudicial effect.
In addition, Meena cannot now question the reasonableness and necessity of the bills since he failed to raise such issues at the trial level. See, e.g., CIG Contractors, Inc. v. Mississippi State Bldg. Comm'n, 510 So.2d 510, 514 (Miss. 1987) (holding that a party may not present a theory on appeal which was not presented at the trial level).
Finally, this Court is unable to address the issue of causal connection because the exhibits (medical bills) were not included with the record. Branch v. State, 347 So.2d 957, 958-59 (Miss. 1977) (appellant's duty to ensure inclusion of exhibits and Court "may only act on the record presented to it"); see Shelton v. Kindred, 279 So.2d 642, 644 (Miss. 1973); Miss.Sup.Ct.R. 11(a).
Meena's failure to include necessary exhibits renders this Court unable to examine the medical bills; examination of these bills is critical to determination of whether the jury's resolution of this issue is contrary to the substantial weight of the evidence.[10]See, e.g., Jackson v. Brumfield, 458 So.2d 736 at 737 (Miss. 1984) (discussing types of information which medical bills should contain in order for these bills to be deemed credible evidence).
In sum, this Court affirms on this issue.

D. Issue: Whether the lower court erred in not sending the jury back to reform or amend its verdict or otherwise grant a new trial after the jury disregarded the peremptory instruction against both defendants, but returned a verdict only against Dr. Meena and in favor of Nurse Greer, contrary to their oath as jurors?

1.
As discussed in Section I(A)(3), the trial judge granted Wilburn's request for a peremptory instruction through which the jury was instructed to find that both Meena and his nurse, Greer, had breached their duty to comply with the requisite standard of care. The jury subsequently rendered a verdict against Meena but exonerated his nurse.
Meena now contends that this Court should reverse and remand for a new trial because "the jury was bound to return a verdict against both defendants, inasmuch as the defendants [were sued] as joint tortfeasors." Meena's Brief at 16. Meena notes that the jurors should have been sent back to further deliberate and to amend their verdict to reflect the judge's instruction that they find both defendants liable. Meena suggests that the jury probably exonerated his nurse because it was confused by another instruction  Instruction 15  which essentially permitted it to disregard *872 a peremptory instruction and to return a verdict against only one joint tort-feasor. Instruction 15 states:
INSTRUCTION 15
The Court instructs the jury that the form of your verdict must be one of the following:
1. We, the jury, find for the plaintiff, Flora Wilburn, against both the defendants, Albert L. Meena, M.D. and Juleigh Greer, and assess the plaintiff's damages at $ ____.
2. We, the jury, find for the plaintiff, Flora Wilburn, against the defendant Albert L. Meena, M.D. and assess the plaintiff's damages at $125,000.00.
We, the jury, find for the defendant Juleigh Greer.
or
We, the jury, find for the plaintiff, Flora Wilburn, against the defendant Juleigh Greer and assess the plaintiff's damages at $ ____.
We, the jury, find for the defendant Albert L. Meena, M.D.
Vol. I, at 55. Meena thus challenges the judge's submission of this instruction.
Wilburn counters that Meena has "no standing" to complain about an error that adversely affected another party. That is, Wilburn contends that she "is the only one who has standing to appeal such a verdict and [that she] is not [even] raising this issue on appeal." See Wilburn's Brief at 22-23. Wilburn adds that this Court has often held that it will not reverse a case simply because one joint tort-feasor was deemed liable and the other was exonerated.

2.
Two case are particularly relevant to the disposition of this issue.
In Golden Flake Snack Foods v. Thornton, 548 So.2d 382 (Miss. 1989), an injured pedestrian filed a negligence action against three alleged joint tort-feasors: (1) Hope Thornton, who was driving the vehicle which struck the pedestrian; (2) Bennie Lewis, who was driving his employer's delivery truck; and (3) Golden Flake, which employed Lewis. Upon conclusion of the trial, the jury deliberated and returned a verdict against Golden Flake and Lewis; however, the jury exonerated Thornton of any liability. Id. Golden Flake and Lewis appealed on the basis of the jury's exoneration of their fellow tort-feasor. This Court left the verdict intact and explained:
The defendant Golden Flake argues strongly that a verdict had to be rendered against the defendant Hope Thornton. One's first thought might be that the defendant Hope Thornton had to be included in the verdict. The defendant Golden Flake should be reminded that the jury could have found against Golden Flake ... and not against [Thornton] without impairing the jury's verdict or requiring reversal of... verdict. Certainly if the jury may leave out Bennie Lewis, the driver of Golden Flake's vehicle, it may also leave out the defendant Hope Thornton.
Mississippi's law on joint and several liability is such that the instant case need not be reversed for the failure to include the defendant Hope Thornton in the verdict. One may recognize that misery wants company, but this Court does not have to assign company to those in misery. The jury had the prerogative of including or not including Hope Thornton in the verdict; after a review, they did not. This Court is loath to find fault, certainly not intentional fault with 12 men and women tried and true.
Id. at 383-84 (citing statutory and case law); see also Capital Transport Co. v. McDuff, 319 So.2d 658, 660-61 (Miss. 1975) ("For some time it has been the established law in this state that a case will not be reversed simply because a master is held liable where the servant is exonerated.") (citing MISS. CODE ANN. § 11-3-37 (1972)).

3.
In sum, under authority of this Court's holdings in Golden Flake and Capital Transport, Meena's contention  that the *873 jury improperly returned a verdict against him but not his nurse  is rejected.[11]
With regard to Meena's contention that submission of Instruction 15 confused the jury, this Court declines to address this "sub-issue" because Meena failed to raise it at the trial level. See Vol. IV, at 552-53 & 565-66; see also Capital Transport Co., 319 So.2d at 661-62; Young v. Robinson, 538 So.2d 781, 783 (Miss. 1989); Unif. Cir.Ct.R. 3.09.

E. Issue: Whether the lower court erred in not granting a mistrial as a result of the plaintiff's expert witness testifying concerning medical malpractice insurance before the jury?

1.
Wilburn presented the supportive testimony of her expert witness, Dr. Russell Samson. During cross-examination, Samson uttered the "I" word:
MEENA'S COUNSEL: And you set yourself up as an individual who can go around and find the errors that others have made; is that true?
SAMSON: I set myself up as a person who is board certified in surgery, who is one of 800, maybe more now, maybe 900 surgeons in this country that have special qualifications in vascular surgery and who feels that he will follow the ethics of the facts rather than the financial interest involved.
MEENA'S COUNSEL: For $2,500.00 a day?
SAMSON: Sir, my expenses 
MEENA'S COUNSEL:  Just answer my question.
SAMSON: My malpractice  my malpractice insurance is almost $50,000.00 a year 
BY THE COURT:  Hold on, Dr. Samson. Answer the question first.
SAMSON: Yes, for $2,500.00, I think it is.
MEENA'S COUNSEL: I have no further questions.
Vol. II, at 157.
Later in the trial  while another witness was testifying  Meena suddenly decided to object to Samson's utterance of the word "insurance." Meena then moved for a mistrial. Id. at 181-82. Judge Sledge refreshed his memory regarding the utterance:
I think there were two or three of us talking, and he went on and never mentioned it again. I don't think it was such  and it was mentioned in regards to himself and no one else, so I don't think it's such that would prejudice the jury in a manner that would constitute or that would warrant granting a mistrial, so I'm going to overrule the motion... . Anything else?
Id. at 183. Meena now contends that the judge erred.

2.
Particularly relevant to the disposition of this issue is West Cash & Carry Bldg. Materials v. Palumbo, 371 So.2d 873, 876 (Miss. 1979). In Palumbo, Justice Patterson noted: "The general rule that insurance should not be mentioned before a jury has long been adhered to by this Court because it was thought to prejudice a defendant." West Cash & Carry Bldg. Materials *874 v. Palumbo, 371 So.2d 873, 876 (Miss. 1979) (citing Herrin v. Daly, 80 Miss. 340, 31 So. 790 (1902)). However, "[t]he likelihood of the [defendant] being prejudiced by the mention of insurance has been diminished in recent years because most jurors, and other citizens, ... share the common knowledge [regarding coverage of] liability insurance." Id. Such awareness has meant that the "mere mentioning of insurance in a trial is not cause for mistrial in all cases." Anchor Coatings v. Marine Industrial Residential, Inc., 490 So.2d 1210, 1219 (Miss. 1986) (citing cases).
The trial judge "is in the most advantageous position to correctly rule whether prejudice, or the lack of it, has emanated from the comment of a witness." Id. Therefore, "a large discretion has been [vested in] the trial [judge] in ruling upon comments concerning insurance arising during a trial." Id. (citing Copiah Dairies, Inc. v. Addkison, 247 Miss. 327, 153 So.2d 689 (1963)).
Of utmost importance, a judge can only make a determination of prejudice if the defendant makes a timely objection and motion for a mistrial. Strictly speaking, timeliness means the objection and motion must be made contemporaneously with the allegedly improper utterance. This is well-known as the "contemporaneous objection rule." Palumbo, 371 So.2d at 875-76. Contemporaneousness is critical because it allows the judge to avert a mistrial, if possible, by admonishing the jury to disregard the utterance. Id. at 876.

3.
In view of the foregoing, this Court rejects Meena's contentions on two grounds.
The first of these grounds is procedural in nature  i.e., Meena's failure to timely object. Meena did not comply with the contemporaneous objection rule. He objected long after Samson uttered "insurance"  indeed, long after Samson concluded testifying. He finally objected and moved for a mistrial during another witness' testimony (and outside the jury's presence).
The second ground on which this Court rejects Meena's contention is substantive in nature  i.e., Meena failed to prove that the judge's denial constituted an abuse of discretion.[12] Samson's utterance was responsive to Meena's counsel's question, and it was in reference to his own insurance. Id. at 875 ("The comment was in response to a question by the defense attorney and, at worst, the testimony indicated the witness, not the defendant, had insurance."); accord Mississippi Ice & Utilities Co. v. Pearce, 161 Miss. 252, 134 So. 164 (1931).
In sum, this Court affirms on this issue. Compare with Anchor Coatings v. Marine Industrial Residential, Inc., 490 So.2d 1210, 1219 (Miss. 1986) (Defendant asked expert witness "who was paying him to testify." Witness responded: "The insurance company." Held: Trial judge did not abuse discretion in denying motion for mistrial.).

F. Issue: Whether the lower court erred in not excluding the testimony of Russell Samson, M.D., one of plaintiff's experts, inasmuch as he failed to qualify as an expert witness in accordance with applicable case law?
Wilburn called Dr. Russell Samson, of Sarasota, Florida, as one of her expert witnesses. Wilburn utilized Samson's expertise pertaining to vascular infections. Long after Samson concluded testifying, Meena moved to strike his testimony. Meena based his motion on Samson's alleged lack of familiarity with "anything about surgeons and how they operate and how they do things here" in Mississippi. Vol. III, at 280-81 & 385. The judge denied the motion after the following exchange transpired:
JUDGE: Was Dr. Samson's testimony in regards to the standard of care?
MEENA'S COUNSEL: It did not go to the standard of care. It goes to causation, which is what we're talking about here... .

*875 JUDGE: ... I assume bacteria grows the same way in Sarasota that it grows in Jackson, and I think that was the basis of his testimony as an expert, was it not?
MEENA'S COUNSEL: I don't remember.
JUDGE: Overruled.
Id. at 281. Meena now contends the judge erred.
Contrary to Meena's contention, Samson's testimony did not pertain to the applicable standard of care to which Mississippi surgeons are duty-bound. As the judge correctly concluded, Samson merely provided a textbook discussion of vascular infections which did not necessitate familiarity with the Mississippi Baptist Medical Center or with Mississippi "surgeons and how they operate." Restated, such familiarity was unnecessary simply because it was irrelevant to what Samson was called to testify about.
In sum, Samson's testimony on vascular infections assisted the jury in its factfinding mission  i.e., to determine whether the removal of staples could have led to Wilburn's vascular infection. Clearly, Samson's testimony fell within the scope of, and was properly admitted pursuant to, Mississippi Rule of Evidence 702. This Court therefore affirms on this issue.

III. CONCLUSION
For the foregoing reasons, this Court affirms.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
McRAE, J., specially concurring by written opinion, joined by ROY NOBLE LEE, C.J., and SULLIVAN, PITTMAN and BANKS, JJ.
DAN M. LEE, P.J., not participating.
McRAE, Justice, specially concurring:[1]
I agree with the majority that the judgment below should be affirmed. In my view, however, today's holding directly contradicts this Court's holding in Beaman v. Helton, 573 So.2d 776 (Miss. 1990). Consequently, I would expressly overrule Beaman.
In Beaman, the defendant physician examined the plaintiff at the request of a third party. A chest x-ray revealed a likely malignancy in the plaintiff's lung, but the physician failed to notify the plaintiff of his findings. When the plaintiff eventually discovered the disease, he sued the physician for medical negligence. The trial court granted summary judgment for the defendant. This Court affirmed, holding that an examining physician owes no duty to an examinee in the absence of a physician/patient relationship. In a well-reasoned dissent, Justice Sullivan maintained that even if no physician/client relationship existed between the defendant and the plaintiff, the physician at least owed a duty to conduct the examination as a reasonable prudent person would have done under the circumstances.
In the instant case, we expressly hold that "liability is not negated by the absence of a doctor-patient relationship." I fully concur. This holding, however, represents a 180-degree about-face from Beaman. The majority admits that "Beaman seems to mean what Meena construes it to mean," i.e., that a physician/patient relationship is an essential element in medical negligence cases. Nevertheless, the majority does not indicate whether Beaman is still good law, thus leaving the issue in limbo.
Today we are holding that whenever physicians or other medical personnel undertake the responsibility of providing health care, they subject themselves to potential liability under the medical negligence cause of action. The existence of a doctor-patient *876 relationship is not a prerequisite to recovery. Our decision is so obviously incompatible with Beaman that, at least in my view, Beaman is no longer viable. The majority has effectively overruled Beaman without saying so. I would state our position clearly and hold that Beaman is overruled.
ROY NOBLE LEE, C.J., and SULLIVAN, PITTMAN and BANKS, JJ., join this opinion.
NOTES
[1] Specifically, Maples testified that he performed a "right femoral popliteal artery bypass." "In layman's terms, ... her natural artery was blocked due to arteriosclerosis, and we went around that blockage with a piece of her own vein, connecting it to the femoral artery above the blockage and to the popliteal artery, which is behind the knee." Rec.Vol. III, at 314.
[2] "Staples" serve the same purpose which stitches serve. Using a "staple gun," the split skin is pulled together and then stapled. The staples "go into the flesh and then curl under"  similar to stapling to paper. Vol. III, at 215-16.
[3] This nurse, Juleigh Greer, testified that she "work[s] for Dr. Meena" and accompanies him on his "rounds" at the hospital. She added that she is a "surgical nurse" and that one of her responsibilities "is to remove staples from patients ... at the direction of Dr. Meena." Vol. II, at 193-94.
[4] Wilburn's defense included the testimony of several expert witnesses.
[5] More specifically, this Court has held that "in all claims for negligence, ... the following elements must be proven": (1) the existence of a duty "to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury"; (2) a breach of that duty; (3) causal relationship between the breach and alleged injury; and (4) injury or damages. Burnham v. Tabb, 508 So.2d 1072, 1074 (Miss. 1987) (citing W. KEETON, PROSSER & KEETON ON TORTS § 41 (5th ed. 1984)); see also Palmer v. Biloxi Regional Medical Center, Inc., 564 So.2d 1346, 1355 (Miss. 1990) ("In a negligence action, the plaintiff bears the burden of producing evidence sufficient to establish the existence of the conventional tort elements of duty, breach of duty, proximate causation, and injury.").
[6] In Ebaugh, which involved gall bladder surgery performed on the wrong patient, the court of appeals opined that the surgeon's "action was admittedly negligent." 22 Cal. App.3d at 895, 99 Cal. Rptr. at 709. The court also noted that the surgeon's action "amount[ed] to a technical battery." Id.

Notably, Meena relied on Ebaugh for support of his contention that Wilburn should have sued for commission of a battery. However, Meena conveniently failed to note that Ebaugh also supports Wilburn's contention that a suit for simple negligence was available under the facts. See Meena's Brief at 11-12.
[7] In Meier, Presiding Justice Hoffman noted that "[a] physician may [negligently] render professional services without the existence of a doctor-patient relationship." 263 N.E.2d at 200.
[8] In Gill, which involved a spinal puncture performed on the wrong patient, the Oregon Supreme Court opined: "We agree with the trial court that a prima facie case of negligence was established." 267 P. at 814.
[9] See 2 J. LEE & B. LINDAHL, MODERN TORT LAW § 25.58 (rev. ed. 1990) ("Evidence as to the applicable standard of care may often be provided by the testimony of the defendant. It is a generally accepted rule where adverse examination of a party is permissible that the testimony of the defendant may serve to prove the standard of care by which the defendant's treatment is to be judged.") (citing cases); Rheingold & Davey, Standard of Care in Medical Malpractice Cases, in R. CONASON, MODERN TRENDS IN MEDICAL MALPRACTICE 25-26 (1978) (Under the "national trend," the plaintiff "may utilize the defendant himself as a source of proof of the standard of care... . Occasionally, the physician [as defendant] will testify to the standard in such a clear way that the plaintiff has little trouble demonstrating a deviation from the standard.") (citing cases).
[10] "When a party makes a motion for a new trial, such motion should be granted only when the verdict is contrary to the substantial weight of the evidence." On appeal, this Court may reverse if the trial judge abused his "quite broad" discretion in deciding whether to grant or deny the motion. Burnham, 508 So.2d at 1075 (citing cases).
[11] Assuming arguendo the jury had returned a verdict against his nurse, Meena would then have been deemed responsible for his nurse's negligence under the doctrine of vicarious liability or respondeat superior. See, e.g., W. PROSSER, supra, at 315 (Under this doctrine, "the master becomes responsible for the same act for which the servant is liable."); J. LEE & B. LINDAHL, supra, at § 25.49  .53 ("A physician's vicarious liability often involves the conduct of the physician's technician or nurse.") (citing cases); Baird v. Sickler, 69 Ohio St.2d 652, 433 N.E.2d 593 (1982) (holding that, under the doctrine of respondeat superior, chief surgeon was liable for his assistant, a nurse-anesthetist); Levett v. Etkind, 158 Conn. 567, 265 A.2d 70 (1969) (where nurse is physician's employee, physician is responsible for any wrongful conduct on the nurse's part); Huss v. Hey, 29 Wis.2d 34, 138 N.W.2d 192 (1965) (same).

Thus, At the very least, Meena should have been thrilled that the jury exonerated his nurse. As this Court aptly queried in Capital Transport: "Of what avail should it be to appellant that its co-defendant ... was so fortunate as to be let out or even given a windfall?" 319 So.2d at 660-61.
[12] Notably, Meena's own expert witness, Dr. Seshadri Raju, made a reference to "insurance companies" during testimony under direct examination. Vol. IV, at 503.
[1] This dissent was written prior to the modifications made in the majority on pages 869 and 870.